**FERGUSON, Appellant,**

v.

**LEAR CORPORATION, Appellee.**

[Cite as *Ferguson v. Lear Corp.*, 155 Ohio App.3d 677, 2003-Ohio-7261.]

Court of Appeals of Ohio,
Sixth District, Erie County.

No. E–03–021.

Decided Dec. 31, 2003.

678

Heather Love Carman and Cheryl Y. Goodrum, for appellant.

Robert J. Gilmer Jr. and Margaret Mattimoe Sturgeon, for appellee.

---

SINGER, Judge.

{¶ 1} This is an appeal from a summary judgment issued by the Erie County Court of Common Pleas to an employer in a suit alleging workplace discrimination. Because we conclude that a material question of fact exists as to whether appellant was legally disabled, we reverse and remand for further proceedings.

{¶ 2} In 1991, appellant, Patricia L. Ferguson, began work for appellee, Lear Corporation, at appellee's Huron, Ohio injection molding plant.

{¶ 3} According to appellant, in 1993, while working in appellee's molding department, she came into contact with a chemical that caused blisters to form inside and outside her mouth. On a physician's instructions, appellee moved appellant to a job that did not require contact with the chemical that caused her reaction.

{¶ 4} In 1996, appellant again reported an adverse reaction to substances in the workplace. Appellant asserted that her exposure to aerosol chemicals at work caused her to experience shortness of breath and irritation to her skin, throat, and chest.

{¶ 5} On May 30, 1998, shortly after starting her workday, appellant reported feeling hot and becoming nauseated. She then noticed a rash developing on her arm. Appellant was taken to a nearby hospital emergency room, where an examination revealed scattered hives on her face, trunk, and extremities. She

was diagnosed as having an allergic reaction, possibly to mold degreaser, to which she had been exposed at work. Antihistamines were administered, and appellant was advised to see her family physician.

{¶ 6} Shortly after her emergency-room treatment, appellant saw her family physician, Dr. Susan Gallagher. Dr. Gallagher advised appellee that appellant could return to work, provided that her tasks be restricted to "dry work only—no use of—no exposure to liquid aerosolized cleaning materials, solvents, paints, adhesives, liquid chemical sprays."

{¶ 7} Upon her return to work, appellee temporarily assigned appellant to breaking down corrugated boxes, a job which did not expose her to chemicals. Nevertheless, on June 19, 1998, appellant reported an allergic reaction to an aerosol cleaning spray to which she was exposed in a workplace restroom.

{¶ 8} In July 1998, during a plant shutdown that appellant maintains she was scheduled to work, she was laid off. Appellee insists that this was because appellant's medical work restrictions made appellee unable to place her in a job during this time. Appellant contends that the layoff was in retaliation for an OSHA complaint she filed about work conditions.

{¶ 9} After the summer shutdown, appellant bid on a "kitting" job—placing parts in a package. Appellee denied appellant that post, however, because working in the kitting department would expose her to propane and diesel fumes and an all-purpose spray cleaner known as "Mean Green." Such conditions would violate appellant's medical restrictions, according to appellee.

{¶ 10} In August 1998, appellant was awarded a position as a "shipping/receiving clerk." There is a dispute as to what this job entailed. According to appellee, an integral part of this position is that the employee spend a small part of her time near the loading docks, where there are trucks and the necessarily accompanying fumes. Appellant insists that this is historically not true and that the job was previously limited to an office. Appellant insists that she was temporarily assigned to the loading dock to assist in a company audit. In any event, appellant was on a loading dock on August 12, 1998, when she reported experiencing yet another allergic reaction.

{¶ 11} Appellant's physician, Dr. Gallagher, concluded that the most recent episode was the result of appellee's assigning appellant in an area that violated her medical work restrictions. On August 15, 1998, Dr. Gallagher sent appellee a letter advising it of her conclusions. The result of this letter, according to the deposition testimony of appellant's supervisor, was a company determination that there was nothing more appellee could do to accommodate appellant's restrictions and that, indeed, there was no existing position in the plant in which appellant could function. Appellee notified appellant that it was going to place her on

layoff until such time as the medical condition requiring the imposition of work restrictions was alleviated.

{¶ 12} Appellant never returned to appellee's employ. Instead, on May 25, 2001, she brought suit against appellee, alleging employment discrimination based on race and disability and retaliatory discharge. Appellee denied the allegations, and the matter proceeded to discovery. Following discovery, appellee moved for and was granted summary judgment on all counts. From this judgment, appellant now brings this appeal, setting forth the following single assignment of error:

{¶ 13} "The trial court erred when it granted Lear's motion for summary judgment on Ms. Ferguson's claims of (A) race discrimination, (B) disability discrimination, and (C) retaliatory discharge."

{¶ 14} On review, appellate courts employ the same standard for summary judgment as do trial courts. *Lorain Natl. Bank v. Saratoga Apts.* (1989), 61 Ohio App.3d 127, 129, 572 N.E.2d 198. The motion may be granted only when it is demonstrated "(1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor." *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 67, 8 O.O.3d 73, 375 N.E.2d 46; Civ.R. 56(C).

{¶ 15} When seeking summary judgment, a party must specifically delineate the basis upon which the motion is brought, *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 526 N.E.2d 798, syllabus, and identify those portions of the record that demonstrate the absence of a genuine issue of material fact. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264. When a properly supported motion for summary judgment is made, an adverse party may not rest on mere allegations or denials in the pleading but must respond with specific facts showing that there is a genuine issue of material fact. Civ.R. 56(E); *Riley v. Montgomery* (1984), 11 Ohio St.3d 75, 79, 11 OBR 319, 463 N.E.2d 1246.

{¶ 16} The parties concur on the elements upon which a plaintiff must produce evidence to establish a prima facie case in each of the three claims appellant advances.

### Racial Discrimination

{¶ 17} To make out a claim of race discrimination in employment, a plaintiff must prove that the employer acted with discriminatory intent. *Mauzy v. Kelly Services, Inc.* (1996), 75 Ohio St.3d 578, 583, 664 N.E.2d 1272. Proof of a discriminatory intent may be direct or indirect. Id. at paragraph one of the

syllabus. "Direct" proof "means that a plaintiff may establish a prima facie case * * * by presenting evidence, of any nature, to show that the employer more likely than not was motivated by a discriminatory intent." Id. at 587, 664 N.E.2d 1272. Indirect proof involves the application of certain inferences and presumptions to conclude that when most common nondiscriminatory reasons for an employment action are eliminated, there is an inference of discriminatory intent. Id. at 583–584, 664 N.E.2d 1272. Such an inference arises when a plaintiff shows that (1) she is a racial minority; (2) she suffered an adverse employment action; (3) she was qualified for the position; and (4) a comparable, nonprotected person was treated more favorably. *Brewer v. Cleveland City Schools Bd.* (1997), 122 Ohio App.3d 378, 385, 701 N.E.2d 1023, applying *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668.

{¶ 18} Appellee concedes that appellant, as an African–American, is a member of a racial minority and that she suffered an adverse employment action. The parties' dispute centers on the remaining two elements of the claim. Appellant insists that she was qualified for both the kitting job and the shipping-clerk position and that comparable white employees were awarded these jobs and/or allowed to continue working on layoff. Appellee maintains that appellant's medical restrictions made her unqualified for the kitting and shipping jobs and that, in any event, the comparable nonprotected persons who appellant contends were treated more favorably than she were not, in fact, comparably situated.

{¶ 19} With respect to the kitting job, notwithstanding appellant's assertion that the "Mean Green" aerosol cleaner used in that job is benign, appellant's own physician testified that working with such a product violated the medical work restrictions that the physician had issued.

{¶ 20} Concerning the shipping position, the parties disagree as to whether the position did or did not require that such a clerk work among the fumes on the loading dock.

{¶ 21} The pivotal question is whether appellant has shown that more favorably treated nonprotected employees were, indeed, comparable.

{¶ 22} "[T]he plaintiff must show that the 'comparables' are similarly-situated *in all* respects. Thus, to be deemed 'similarly-situated,' the individuals with whom the plaintiff seeks to compare [her] treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it. (Citation omitted and emphasis sic.)" *Kroh v. Continental Gen. Tire, Inc.* (2001), 92 Ohio St.3d 30, 31, 748 N.E.2d 36, quoting *Mitchell v. Toledo Hosp.* (C.A.6, 1992), 964 F.2d 577, 583.

{¶ 23} Appellant advances seven employees as "comparables." Two of these had weight restrictions on lifting and were accommodated by appellee by being assigned to light-duty jobs. Four of these apparently had no medical restrictions, but were Caucasian shipping clerks who were not laid off. The seventh "comparable" is a woman who appellant claims was on medical restriction for an allergic reaction to PVC fumes and who was reassigned in accommodation to that restriction.

{¶ 24} In our view, the scope of appellant's medical restrictions is material as to whether other nonprotected employees were similarly situated and, therefore, valid comparables. Those employees who had weight restrictions or no restrictions are not similarly situated to appellant.

{¶ 25} The facts advanced by appellant with respect to the remaining employee are simply not supported by the record. In her memorandum in opposition to summary judgment, appellant cites her own deposition testimony and appellant's response to interrogatories and requests for admission. Yet the only evidence provided by appellant in her own deposition was that "yes, some girl was on restrictions to my knowledge." The interrogatories and admissions to which appellant cites contain only an admission that such a woman worked at Lear. The remaining questions, as to this employee's medical restrictions, were objected to on the ground of medical confidentiality and were not answered, pending a court ruling on the objection or an appropriate protective order. We find nothing in the record showing that such a ruling was made or such a protection order issued. As a result, this employee may not be used as a "comparable." Accordingly, appellant has failed to meet her burden to come forth with evidence that comparable nonprotected employees were treated more favorably and the trial court's award of summary judgment on this claim is sustained.

## Retaliatory Discharge

{¶ 26} For the elements of wrongful discharge, the parties rely on identical oft-quoted standards articulated in *Painter v. Graley* (1994), 70 Ohio St.3d 377, 639 N.E.2d 51, at fn. 8:

{¶ 27} "* * * Ohio courts may find useful the analysis of Villanova Law Professor H. Perritt, who, based on review of cases throughout the country, has described the elements of the tort as follows:

{¶ 28} " '1. That clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the clarity element).

{¶ 29} " '2. That dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the jeopardy element).

{¶ 30} " '3. The plaintiff's dismissal was motivated by conduct related to the public policy (the causation element).

{¶ 31} " '4. The employer lacked overriding legitimate business justification for the dismissal (the overriding justification element).' (Emphasis sic.) H. Perritt, The Future of Wrongful Dismissal Claims: Where Does Employer Self Interest Lie? (1989), 58 U.Cin.L.Rev. 397, 398–399." See, also, *Collins v. Rizkana* (1995), 73 Ohio St.3d 65, 69–70, 652 N.E.2d 653; *Kulch v. Structural Fibers, Inc.* (1997), 78 Ohio St.3d 134, 150–151, 677 N.E.2d 308.

{¶ 32} The inclusion of this claim is somewhat perplexing. All of the cases cited relate to circumstances in which employees at will were discharged for reasons in violation of public policy. Employees at will may be terminated by an employer for any reason or for no reason. *Phung v. Waste Mgt., Inc.* (1986), 23 Ohio St.3d 100, 102, 23 OBR 260, 491 N.E.2d 1114, overruled on other grounds. *Kulch* at paragraph three of the syllabus. An exception to the employment-at-will doctrine was created in *Greeley v. Miami Valley Maintenance Contrs., Inc.* (1990), 49 Ohio St.3d 228, 551 N.E.2d 981, which recognized a cause of action for a wrongful discharge in violation of public policy.

{¶ 33} Retaliatory discharge for an employee who has reported a workplace violation to OSHA is in violation of public policy. *Kulch,* supra, 78 Ohio St.3d at 151–152, 677 N.E.2d 308. Appellant insists that her layoff was in retaliation for her OSHA report.

{¶ 34} Appellee denies this connection and points out that it was not even notified of an OSHA investigation until substantially after appellant was laid off. Appellant responds that appellee could have known because several days before she was laid off appellant told her Local UAW union president about the OSHA complaint. Since the union and management maintained regular communication, appellant insists that appellee could have discovered the OSHA complaint though that means.

{¶ 35} Appellant's assertion is problematic in two respects. First, her reference to her union president, as well as other references throughout the record, suggested that appellant is a union member and presumably the beneficiary of a collective bargaining agreement. In other words, she is not an employee at will and, therefore, may not pursue a *Greeley* action. *Haynes v. Zoological Soc. of Cincinnati* (1995), 73 Ohio St.3d 254, 652 N.E.2d 948, syllabus. Moreover, although the causation element of a wrongful-discharge cause of action is ordinarily a question of fact, *Kulch,* 78 Ohio St.3d at 151, 677 N.E.2d 308, appellant presented no evidence that appellee was even aware of her OSHA complaint when she was laid off. The scenario that appellant told someone who might have told someone in management is simply too tenuous a thread of

communication to satisfy appellant's burden of coming forth with evidence pursuant to Civ.R. 56. Accordingly, the trial court's award of summary judgment on appellant's wrongful-discharge claim must be sustained.

## Disability Discrimination

{¶ 36} Both the Americans with Disabilities Act ("ADA"), Section 12112, Title 42, U.S.Code and R.C. 4112.02(A) prohibit employers from discriminating against employees who are disabled.

{¶ 37} The standards for establishing a prima facie case under either law are "virtually identical." *Sadinsky v. EBCO Mfg. Co.* (1999), 134 Ohio App.3d 54, 59, 730 N.E.2d 395.

{¶ 38} "To state a claim of disability discrimination under the ADA, a party must establish that:

{¶ 39} " '* * * (1) He [or she] is an individual with a disability; (2) he [or she] is "other-wise qualified" to perform the job requirements, with or without reasonable accommodation; and (3) he [or she] was discharged solely by reason of his [or her] handicap.* * *' *Monette v. Electronic Data Systems Corp.* (C.A.6, 1996), 90 F.3d 1173, 1178. Similarly, to state a prima facie case of handicap discrimination under R.C. 4112.02(A), the party seeking relief must establish:

{¶ 40} " '* * * (1) That he or she was handicapped; (2) that an adverse employment action was taken by an employer, at least in part, because the individual was handicapped, and (3) that the person, though handicapped, can safely and substantially perform the essential functions of the job in question.* * *' *Columbus Civ. Serv. Comm. v. McGlone* (1998), 82 Ohio St.3d 569, 571, 697 N.E.2d 204." Id. at 58, 730 N.E.2d 395.

{¶ 41} The argument with respect to disability discrimination centers upon whether appellant is "disabled" within the context of the ADA or R.C. 4112.02(A). Under both federal regulations and Ohio code, a "disability" [1] is an impairment, physical or mental, which substantially limits one or more of an individual's major life activities, a record of such impairment, or being regarded as one having such an impairment. Section 12102(2), Title 42, U.S.Code; Section 1630.2(k), Title 29, C.F.R.; R.C. 4112.01(A)(13); *Hart v. Columbus Dispatch*, 10th Dist. No. 02AP–506, 2002-Ohio-6963, 2002 WL 31819705, ¶ 24. "Working" is statutorily recognized as a major life activity. R.C. 4112.01(A)(13).

{¶ 42} Appellee, citing *Maulding v. Sullivan* (C.A.8, 1992), 961 F.2d 694, insists that, for an employee to be substantially limited in the activity of "working," he or

---

1. Formerly denominated as "handicap" in former R.C. 4112.01(A)(13).

she must be precluded from more than a particular job or the job of the employee's choosing. Moreover, citing *Wooten v. Farmland Foods* (C.A.8, 1995), 58 F.3d 382, appellee maintains that even an impairment that disqualifies an employee from only a range of jobs is not considered substantially limiting. Appellee insists that this means that to be substantially impaired in "working," one must be wholly unemployable in any capacity. According to appellee, because after leaving its employ appellant found other work, she could not be found to be substantially impaired in that category.

{¶ 43} The cases appellee cites are either procedurally distinguishable or do not support the proposition appellant advances on their authority. *Maulding* is an appeal from a district court decision affirming a United States Merit System Protection Board factual finding that Maulding, a pharmacologist in the United States Department of Health and Human Services, failed to present adequate proof that her chemical allergy precluded her from laboratory work. As an alternate ground for affirmance, the appellate court approved the district court's observation that a major life activity is not substantially limited when an impairment interferes with the performance of only one particular job. *Maulding* at 698.

{¶ 44} This conclusion is echoed in *Wooten,* supra, quoting *Heilweil v. Mt. Sinai Hosp.* (C.A.2, 1994), 32 F.3d 718, 723, stating that "[a]n impairment that disqualifies a person from only a narrow range of jobs is not considered a substantially limiting one."

{¶ 45} The present matter is distinguished from *Maulding* because that case was a review of a finding of fact following a hearing, whereas this case is before us on summary judgment. In summary judgment, the existence of a material question of fact precludes affirmance. Whether a plaintiff is substantially limited in a major life activity is generally a question of fact. *Hines v. Chrysler Corp.* (D.Colo.2002), 231 F.Supp.2d 1027, 1035. Moreover, an examination of these cases reveals a standard substantially narrower than appellee advances. There is a material difference between the proposition that exclusion from a single job or range of jobs is not substantially limiting and appellee's assertion that an employee must be precluded from all employment.

{¶ 46} We also find it somewhat incongruous that appellee argues that the impairment of appellant's capacity to work is insufficient to qualify her as "disabled" when appellee concedes that the restrictions arising from this impairment preclude her from any job in their factory. This strikes us as a material question that should be resolved by a trier of fact.

{¶ 47} Appellee advances a similar convoluted argument as to whether appellant was qualified for any position in the plant. Appellee is unqualified for a

"kitting" position or a clerk's position because both of those jobs would place her in contact with conditions that would violate her medical restrictions. Appellee seems to suggest that appellant is not disabled, but if she is, her disability disqualifies her from any job she might be otherwise qualified for in the plant. Again, this is the sort of assertion that should be tested by a trier of fact.

{¶ 48} Consequently, we conclude that a question of fact exists as to whether appellant is legally "disabled" and qualified for a position and that question is material to whether appellee engaged in employment discrimination based on disability with respect to her. Accordingly, appellant's assignment of error with respect to disability discrimination is well taken.

{¶ 49} On consideration whereof, the judgment of the Erie County Court of Common Pleas is affirmed in part and reversed in part. This matter is remanded to said court for further consideration consistent with this decision. Costs to appellee.

Judgment reversed in part
and cause remanded.

PETER M. HANDWORK, P.J., concurs.

JUDITH ANN LANZINGER, J., dissents.

LANZINGER, Judge, dissenting.

{¶ 50} I respectfully dissent from the majority's conclusion that there are material issues of fact on appellant's claim under R.C. 4112.02(A) for disability discrimination. Ferguson apparently is unemployable only at a particular place—Lear's injection molding plant—a plant where she would be exposed to chemicals in contravention of her own physician's medical restrictions for her. I cannot find that because Ferguson is chemically sensitive and undisputedly unable to work at any job in Lear's Huron plant—that she is "substantially limited" in a major life activity. She is currently employed elsewhere.

{¶ 51} Because I believe that the record shows that Ferguson's medical restrictions render her unqualified for any position at Lear's plant and that no material issues remain, I would affirm the trial court's decision to grant summary judgment on all causes of action.