**HOUSE, Appellant,**

v.

**KIRTLAND CAPITAL PARTNERS et al., Appellees.**

[Cite as *House v. Kirtland Capital Partners,* 158 Ohio App.3d 68, 2004-Ohio-3688.]

Court of Appeals of Ohio,
Eleventh District, Lake County.

No. 2003–L–011.

Decided July 9, 2004.

70

Richard N. Selby II, for appellant.

James I. Hackenberg and Joseph P. Szeman, for appellees.

JUDITH A. CHRISTLEY, Judge.

{¶ 1} Appellant, Gloria House, appeals from a judgment of the Lake County Court of Common Pleas granting summary judgment in favor of appellees,

Turben Developmental Services Foundation, Inc. and Kirtland Capital Partners. Based upon the following, we affirm the judgment of the trial court.

{¶ 2} The following facts were disclosed through the parties' discovery. In August 1994, appellant was hired by Dr. Susan Turben to work as a part-time secretary for appellee, Turben Developmental Services Foundation, Inc. ("the Turben Foundation").[1] At the time of appellant's employment, the Turben Foundation was sharing office space with appellee, Kirtland Capital Partners.

{¶ 3} In November 1995, appellant was involved in an automobile accident and injured her back. Despite her back injury, appellant continued to work full-time for the Turben Foundation. Appellant testified during her deposition that her back injury caused some discomfort while at work and she often needed assistance to lift objects.

{¶ 4} In January 1997, appellant was hired by Debbie Baughman to work as a secretary for Kirtland Capital Partners. Appellant began to divide her available work hours between the Turben Foundation and Kirtland Capital Partners.

{¶ 5} At the end of May 2000, appellant elected to undergo spinal-fusion surgery in an attempt to alleviate her back pain. Appellant was advised by her doctor that the surgery would require at least a four-month leave of absence from her duties with appellees. The estimated time of her return to work was the middle of October 2000. Appellant informed appellees that after her surgery she would need four months to rehabilitate her back prior to returning to work.

{¶ 6} Sometime in August 2000, Ms. Baughman sent appellant an e-mail inquiring whether she would be available to work from home. Appellant responded that she would be unable to work from home as her back had not yet healed.

{¶ 7} By November 2000, appellant had still not returned to work and was advised by her doctor that she could not begin part-time employment until December 15, 2000. On November 16, 2000, Dr. Turben informed appellant via telephone that she was being terminated from her employment with appellees. Later that day, appellant received a letter from appellees verifying her employment termination. The letter explained that her positions had previously been held open for the estimated four months of rehabilitation. However, appellant's inability to return to work within that period of time and her inability to provide a definite return date required appellees to permanently fill her positions, as a "serious backlog" of work had occurred since her departure.

---

1. When appellant initially began her employment, the Turben Foundation was titled Turben Developmental Services, Inc. Soon thereafter, it was given the current title of Turben Developmental Services Foundation, Inc.

{¶ 8} On October 12, 2001, appellant filed a complaint with the Lake County Court of Common Pleas, naming appellees as the defendant parties. The complaint prayed for relief in excess of $25,000, based upon appellees' alleged failure to reasonably accommodate appellant's disability and wrongful discharge of appellant in violation of the Americans with Disabilities Act ("ADA"), Ohio Civil Rights Act ("OCRA"), and Ohio public policy. The complaint also prayed for compensatory and punitive damages in excess of $25,000 for intentional infliction of emotional distress.

{¶ 9} Appellees filed individual answers to appellant's complaint, and all parties engaged in discovery. Following discovery, appellees filed a joint motion for summary judgment. The joint motion for summary judgment argued that the ADA and the OCRA were not applicable, as appellees were not "employers" as defined by either the ADA or the OCRA. Appellees further contended that appellant's claim for relief under Ohio public policy failed as she was not disabled and that appellant had failed to present any evidence to support her claim for intentional infliction of emotional distress.

{¶ 10} Appellant filed a brief in opposition to appellees' joint motion for summary judgment that included supporting evidentiary material. The brief in opposition asserted that appellees were her employers and that she was disabled as defined by the ADA and the OCRA.

{¶ 11} After reviewing the parties' submissions, the trial court granted summary judgment in favor of appellees. In doing so, the trial court determined that appellees were not employers subject to the mandates of either the ADA or the OCRA. Furthermore, the court stated that appellant was not disabled and, therefore, her claim under Ohio public policy failed. Finally, the court concluded that appellant failed to present any evidence that would establish a claim for intentional inflection of emotional distress.

{¶ 12} From this judgment, appellant filed a timely notice of appeal and sets forth the following two assignments of error for our consideration:

{¶ 13} "[1.] The trial court erred in granting summary judgment to Defendant Kirtland Capital on the grounds that Kirtland Capital was not House's employer.

{¶ 14} "[2.] The trial court erred in determining that House did not have a disability for purposes of her statutory and common law claims for disability discrimination."

{¶ 15} Prior to addressing appellant's assignments of error, we note that she has failed to provide any contentions or argumentation regarding the court's grant of summary judgment with respect to her intentional infliction of emotional distress claim. App.R. 16(A)(7) provides that an appellant shall include in her

brief "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." See, also, Loc.R. 12(C)(4). This court "may disregard an assignment of error presented for review" if the party raising it fails to comply with the above requirements. App.R. 12(A)(2). Because appellant has failed to set forth any contentions with respect to the court's grant of summary judgment against her claim for intentional infliction of emotional distress, we will forgo any further analysis regarding such claim.

{¶ 16} That being said, we will now set forth the appropriate standard of review. An appellate court reviews a trial court's decision on a motion for summary judgment de novo. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. Summary judgment is proper when (1) there is no genuine issue as to any material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come but to one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence construed most strongly in his favor. Civ.R. 56(C); *Leibreich v. A.J. Refrigeration, Inc.* (1993), 67 Ohio St.3d 266, 268, 617 N.E.2d 1068.

{¶ 17} Material facts are those facts that might affect the outcome of the suit under the governing law of the case. *Turner v. Turner* (1993), 67 Ohio St.3d 337, 340, 617 N.E.2d 1123, citing *Anderson v. Liberty Lobby, Inc.* (1986), 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202. To determine what constitutes a genuine issue, the court must decide whether the evidence presents a sufficient disagreement to require submission to a jury, or whether it is so one-sided that one party must prevail as a matter of law. *Turner* at 340, 617 N.E.2d 1123.

{¶ 18} The party seeking summary judgment on the ground that the nonmoving party cannot prove its case bears the initial burden of informing the trial court of the basis for the motion and of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential elements of the nonmoving party's claims. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264. The moving party must be able to point specifically to some evidence of the type listed in Civ.R. 56(C) that affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claim. Id. at 293, 662 N.E.2d 264.

{¶ 19} If the moving party fails to satisfy this initial burden, summary judgment should be denied. Id. However, if this initial burden is met, the nonmoving party has a reciprocal burden to respond, by affidavit or as otherwise provided in the rule, in an effort to demonstrate that there is a genuine issue of fact suitable for trial. Id.

{¶ 20} We will first examine appellant's second assignment of error as it is dispositive of the matter before us. Appellant's second assignment of error contends that the trial court erred by concluding that appellant did not have a "disability" to establish her claim for disability discrimination. Specifically, appellant asserts that she presented evidence demonstrating a physical impairment that acted to substantially limit one or more major life activities. Thus, appellant concludes that there was a genuine issue of material fact as to whether she had a "disability."

{¶ 21} Both the ADA and OCRA prohibit employers from discriminating against employees who are disabled. Specifically, under the ADA, "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to * * * discharge of employees." Section 12112(a), Title 42, U.S.Code.

{¶ 22} Likewise, pursuant to R.C. 4112.02(A), the OCRA provides that it shall be an unlawful discriminatory practice "[f]or any employer, because of * * * disability * * * to discharge without just cause * * * or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." R.C. 4112.02 sets out Ohio's clear public policy in opposition to the wrongful discharge of an employee based upon an employer's discrimination against such employee's physical or mental disability. See, e.g., *Cox v. Commercial Parts & Serv.* (1994), 96 Ohio App.3d 417, 645 N.E.2d 123.

{¶ 23} The standards for demonstrating a prima facie case under either law are virtually identical. To state a claim of disability discrimination under the ADA, a party must establish that "(1) he is an individual with a disability; (2) he is 'otherwise qualified' to perform the job requirements, with or without reasonable accommodation; and (3) he was discharged solely by reason of his handicap." *Monette v. Electronic Data Sys. Corp.* (C.A.6, 1996), 90 F.3d 1173, 1178.

{¶ 24} Similarly, to state a prima facie case of handicap discrimination under R.C. 4112.02(A), the party seeking relief must establish "(1) that he or she was handicapped, (2) that an adverse employment action was taken by an employer, at least in part, because the individual was handicapped, and (3) that the person, though handicapped, can safely and substantially perform the essential functions of the job in question. *Columbus Civ. Serv. Comm. v. McGlone* (1998), 82 Ohio St.3d 569, 571, 697 N.E.2d 204, 206, citing *Hazlett v. Martin Chevrolet, Inc.* (1986), 25 Ohio St.3d 279, 281, 25 OBR 331, 333, 496 N.E.2d 478, 480." *Sadinsky v. EBCO Mfg. Co.* (1999), 134 Ohio App.3d 54, 58–59, 730 N.E.2d 395. See, also, *Ferguson v. Lear Corp.*, 155 Ohio App.3d 677, 2003-Ohio-7261, 802 N.E.2d 1141, at ¶ 37–40.

{¶ 25} The case at bar requires us to determine whether there is a genuine issue of material fact as to whether appellant had a disability under either the ADA or R.C. 4112.02. "Under *both* federal regulations and Ohio code a 'disability' * * * is an impairment, physical or mental, *which substantially limits one or more of an individual's major life activities,* a record of such impairment, or being regarded as one having such an impairment." (Emphasis added.) *Ferguson* at ¶ 41, citing Section 12102(2), Title 42, U.S.Code; 29 C.F.R. 1630.2(k); R.C. 4112.01(A)(13); *Hart v. Columbus Dispatch,* 10th Dist. No. 02AP–506, 2002-Ohio-6963, 2002 WL 31819705, ¶ 24.

{¶ 26} Accordingly, in further defining "disability," we note that "[b]ecause Ohio's handicap-discrimination law was modeled after the federal [ADA], Ohio courts may seek guidance when interpreting the Ohio handicap-discrimination statute from regulations and cases that interpret the ADA." *Pflanz v. Cincinnati,* 149 Ohio App.3d 743, 2002-Ohio-5492, 778 N.E.2d 1073, ¶ 13. See, also, *Columbus Civ. Serv. Comm.,* 82 Ohio St.3d 569, 697 N.E.2d 204.

{¶ 27} As evidence of major life activities that have been substantially limited, appellant cites a written statement made by her attending physician, Dr. John A. Davis Jr., which was attached to her brief in opposition. The written statement provided that due to restricted flexibility, appellant was limited in the duration she could sit and that such limitations were permanent.

{¶ 28} Furthermore, appellant testified during her deposition that she had problems kneeling and lifting heavy objects. Thus, appellant concludes that her difficulty lifting, kneeling, and sitting constitute major life activities that have been substantially limited.

{¶ 29} First, we must determine whether lifting, kneeling, and sitting constitute major life activities. In *Pflanz,* the First Appellate District recently held that lifting was not a "major life activity." Id. at ¶ 20. In doing so, that court noted that "[a]lthough the ADA regulations recognize lifting as a major life activity, * * * 'lifting' is not specifically mentioned as a major life activity under R.C. 4112.01." Id. at ¶ 22. The *Pflanz* court further concluded that neither Ohio common law nor statutory law recognizes lifting as a major life activity and, thus, determined that the inability to lift objects does not, standing alone, constitute a "disability" under R.C. 4112.01. Id.

{¶ 30} We disagree with the First Appellate District's holding in *Pflanz* and conclude that appellant's inability to lift objects does constitute a major life activity. In short, we again note that in interpreting the provisions of R.C. 4112.01, we may look to its federal counterpart, the ADA, for assistance in defining various terms. The *Pflanz* court properly noted that ADA regulations have in fact recognized lifting as a major life activity. Id. at ¶ 22. Thus,

concluding that lifting is not a major life activity would be an inappropriate statutory interpretation of R.C. 4112.01, as exemplified by the ADA.

{¶ 31} Although R.C. 4112.01(A)(13) does not specifically list "lifting" as a major life activity, those actions that are expressly listed clearly represent a nonexhaustive list. The common theme linking the activities expressly listed is their necessity. " 'Major life activities' thus refers to those activities that are of central importance to daily life." *Toyota Motor Mfg., Kentucky, Inc. v. Williams* (2002), 534 U.S. 184, 197, 122 S.Ct. 681, 151 L.Ed.2d 615. In short, the actions listed demonstrate manual activities that must be performed on almost a daily basis, without impediment, to sustain a normal way of life. Clearly, lifting is a manual task that is often an unavoidable necessity of daily life. Therefore, we now hold that lifting is a major life activity.

{¶ 32} In relation to the foregoing, we note that kneeling is also not expressly recognized as a major life activity by statute or common law. Again, despite that it has not been recognized, we conclude that kneeling is a basic manual task that must be performed on an almost daily basis to sustain a normal way of life. Thus, kneeling is also a major life activity.

{¶ 33} Finally, regarding appellant's inability to sit for long periods of time, it is clear that sitting is expressly listed as a major life activity under ADA regulations. See, e.g., *Pflanz*, 149 Ohio App.3d 743, 2002-Ohio-5492, 778 N.E.2d 1073, at fn. 10, citing Section 1630, Title 29, C.F.R., Appendix to Part 1630— Interpretive Guidance on Title I of the Americans with Disabilities Act, Section 16302.1(1). Thus, we consider sitting to be a major life activity.

{¶ 34} Despite determining that lifting, kneeling, and sitting are major life activities, appellant was also required to demonstrate that her particular injury acted to substantially limit such major life activities. That being said, the term "substantially limits" has been defined as meaning that the employee is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. * * * The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." Section 1630.2(j)(3)(i), Title 29, C.F.R.

{¶ 35} In addition, the court should consider the following factors when determining whether an individual is substantially limited in a major life activity: "(1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and (3) the permanent or long-term impact or the expected permanent or long term impact of or resulting from the impairment." Id. See, also, *Pflanz* at ¶ 16.

{¶ 36} The Supreme Court of the United States has recently interpreted "substantially limits" even more narrowly by defining it as "an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives. The impairment's impact must also be permanent or long term." *Williams*, 534 U.S. at 198, 122 S.Ct. 681, 151 L.Ed.2d 615. Thus, an employee asserting a claim for disability discrimination must provide sufficient evidence that she suffers from a permanent or long-term disability that restricts her not only from a wide range of jobs but also from accomplishing daily activities. See, e.g., *Yamamoto v. Midwest Screw Products*, 11th Dist. No. 2000–L–200, 2002-Ohio-3362, 2002 WL 1400106, at ¶ 24.

{¶ 37} With that in mind, we note that "[i]t is insufficient for individuals attempting to prove disability status under this test to merely submit evidence of a medical diagnosis of an impairment. Instead, the ADA requires those 'claiming the Act's protection . . . to prove a disability by offering evidence that the extent of the limitation [caused by their impairment] in terms of their own experience . . . is substantial.' " *Williams*, 534 U.S. at 198, 122 S.Ct. 681, 151 L.Ed.2d 615, quoting *Albertson's, Inc. v. Kirkingburg* (1999), 527 U.S. 555, 567, 119 S.Ct. 2162, 144 L.Ed.2d 518. Therefore, it is clear that the existence of a "disability" must be determined on a case-by-case basis as a "disability" not necessarily based on the name or diagnosis of the impairment the person has but on the effect of that impairment on the life of the individual. *Williams*, 534 U.S. at 198, 122 S.Ct. 681, 151 L.Ed.2d 615. Again, the touchstone of this portion of our analysis is whether the impairment *severely restricts* the individual from doing activities that are of *central importance* to most people's daily lives. Id.

{¶ 38} In the case at bar, appellant's deposition testimony revealed that her difficulty in lifting, kneeling, and sitting has caused problems in performing daily activities such as cleaning, yard work, vacuuming the house, playing with her kids, and driving for long periods of time. However, appellant's testimony revealed that in many respects, her back injury did not *fully* prohibit her from accomplishing these tasks; instead, appellant testified that there was only a certain level of pain or discomfort involved in completing each task. For example, appellant stated that sitting, in general, or sitting while driving for long distances created discomfort and pain in her back. Nevertheless, appellant further testified that she could often alleviate this pain by standing and stretching for a short period of time. Certainly, appellant's impairment in this respect cannot be considered to be a severe restriction.

{¶ 39} In addition, appellant testified that her back injury prevented her from playing basketball or running with her kids. Although appellant's back injury has restricted her from enjoying these strenuous physical activities with her children, such evidence does not demonstrate a significant restriction in her

ability to perform either a class of jobs or a broad range of jobs. Obviously, appellant enjoyed engaging in physical activities with her children; however, appellant's employment did not require her to engage in such demanding physical activity. While it is unfortunate that appellant is unable to enjoy these physical activities with her children, we conclude that this restriction is not a significant restriction and, thus, does not establish a disability for the purpose of establishing a discrimination claim against appellees.

{¶ 40} Moreover, appellant was unable to provide any evidence that her impairments acted as a *severe* or significant restriction to her duties at work. Specifically, appellant testified that she very rarely needed to lift objects and that when she was unable to lift an object, she could request the assistance of a co-worker. Appellant also stated that, although it was uncomfortable to sit at her desk for long periods of time, standing and stretching would often help subdue any discomfort. In regard to kneeling, appellant explained that she was at times required to kneel at work. However, appellant further stated that she was, in fact, able to kneel, but due to a lack of flexibility it was difficult to stand back up.

{¶ 41} Appellant's testimony further confirmed that she was not restricted from either a class of jobs or a broad range of jobs as she testified that following the termination of her employment with appellees, she acquired new employment involving similar job duties. Appellant testified that although there was some discomfort in accomplishing her new job tasks, she was able to adequately carry out the necessary work. Such evidence further demonstrates that appellant was not disabled for the purposes of a discrimination claim. See, e.g., *Yamamoto*, 2002-Ohio-3362, at ¶ 27.

{¶ 42} The foregoing has established that the evidence set forth by appellant merely demonstrates a level of physical discomfort associated with lifting, kneeling, and sitting that does not rise to the level of a severe restriction. Thus, appellant has failed to demonstrate that a major life activity has been substantially limited, and, therefore, she is not disabled.

{¶ 43} Based upon the foregoing analysis, appellant has failed to demonstrate a disability to establish a claim of discrimination under the ADA, R.C. 4112.02, or Ohio public policy. The narrow interpretation of the disability terms encompassed within our review was necessary as "these terms need to be interpreted strictly to create a demanding standard for qualifying as disabled." *Williams*, 534 U.S. at 197, 122 S.Ct. 681, 151 L.Ed.2d 615. Appellant's second assignment of error is without merit.

{¶ 44} In addition, regardless of the existence or nonexistence of a disability, "the public policy of Ohio proscribing discrimination against persons with physical handicaps does not extend so far as to require an employer to

continue the employment of a disabled employee who is unable to perform his [or her] job duties as a result of work-related injury." *Barker v. Dayton Walther Corp.* (1989), 56 Ohio App.3d 1, 4, 564 N.E.2d 738. We conclude that the foregoing is equally applicable to a disabled employee who is unable to perform his or her job duties because of a nonwork-related injury or condition.[2] See, e.g., *Bourekis v. Saidel & Assoc.* (June 22, 1994), 2d Dist. No. 14105, at 41, 1994 WL 286304, (Fain, J., concurring). See, also, R.C. 4112.02(A) and (L).

{¶ 45} In the instant case, appellant's extended absence and inability to provide appellees with a definite full-time return date was detrimental to appellees' business, as it created a serious backlog of work. Therefore, appellant's inability to perform her job duties during an indefinite, extended duration of time represents a nondiscriminatory reason for employment termination. For this additional reason, appellant's second assignment of error is without merit.

{¶ 46} Under her first assignment of error, appellant argues that the trial court erred in determining that she was not employed by Kirtland Capital Partners. First, we note that appellant has misconstrued the trial court's judgment entry as concluding she was not employed by Kirtland Capital Partners. To the contrary, the court simply determined that Kirtland Capital Partners was not an "employer" as defined by the ADA and the OCRA and, therefore, these statutes were inapplicable.

{¶ 47} Despite the trial court's determination that Kirtland Capital Partners was not an employer under either the ADA or R.C. 4112.02, our de novo review of appellant's second assignment of error has established that appellant was not disabled under either statute. Thus, appellant's first assignment of error is moot.

{¶ 48} Because appellant's first assignment of error is moot and her second assignment of error is without merit, the trial court did not err in granting summary judgment in favor of appellees. We hereby affirm the judgment of the trial court.

DONALD R. FORD, P.J., and WILLIAM M. O'NEILL, J., concur.

---

2. We note that the Ohio Supreme Court has specifically limited public policy claims under the Workers' Compensation Act to claims that arise solely from work-related injuries. *Coolidge v. Riverdale Local School Dist.*, 100 Ohio St.3d 141, 2003-Ohio-5357, 797 N.E.2d 61. However, unlike the Workers' Compensation Act, the ADA and R.C. 4112.02 make no distinction between an employer's discrimination against a disability that was the result of a work-related injury and a nonwork-related injury. Thus, for purposes of a disability discrimination claim, it is irrelevant whether the disability was caused by an injury sustained at work.