DECISION AND JUDGMENT ENTRY
{¶ 1} Appellant, Sheila Howell, appeals the decision of the Lucas County Court of Common Pleas which rendered summary judgment in favor of her employer and the appellee herein, the Whitehurst Company ("Whitehurst"), on appellant's claims of racial discrimination, breach of implied contract, and wrongful discharge.
 {¶ 2} In August 1998, appellant began her employment with Whitehurst, which manages residential apartment complexes, as a leasing specialist. Her responsibilities included promoting the apartment complex to prospective tenants, running the on-site apartment leasing office, and generally keeping the model apartment and office in good order. After receiving favorable reviews from her supervisors, appellant was promoted to a site manager at the Heathbriar Apartments around May 2000. As site manager, appellant's duties significantly increased; in addition to her former duties, appellant was responsible for fielding maintenance requests from tenants and supervising the apartment complex's maintenance person.
 {¶ 3} Appellee asserted through affidavits that it became unsatisfied with appellant's job performance shortly after her promotion; appellant's supervisor stated that tenants and employees had complained on several occasions regarding appellant's "rude and abrasive manner." Appellant received one written warning from her manager on August 18, 2000, concerning "gross insubordination," "excessive defective work due to employee's won errors," and "work output below standard." Each ground for the warning was numbered and appears to correspond to rules outlined in appellee's policies and procedures manual.
 {¶ 4} Despite the warning, appellee testified that appellant's performance did not improve and more tenants complained to management about appellant's behavior. Appellant was terminated on September 14, 2001, after her manager discovered that a unit was not ready to show as scheduled.
 {¶ 5} After some discovery, appellee moved for summary judgment as to all claims, and after considering the depositions, affidavits, and evidence in the record, the trial court granted appellee's motion.
 {¶ 6} Appellant asserts the following assignments of error:
 {¶ 7} "Assignment of Error Number One: The trial court erroneously used the wrong standard for an indirect method of demonstrating a prima facie case of racial discrimination in Ohio law under R.C. 4112.02 and4112.99 by refusing to consider that appellant's replacement by a Caucasian employee meets the fourth prong of the traditional test.
 {¶ 8} "Assignment of Error Number Two: The Common Pleas Court erroneously held that appellant is an at-will employee and that the specific and detailed disciplinary provisions of the employment manual did not rise to the level of an implied contract.
 {¶ 9} "Assignment of Error Number Three: The Common Pleas court erred in holding that plaintiff has not shown that defendant violated a clear public policy against racial discrimination of employees."
 {¶ 10} We review appellant's assignments of error de novo. Grafton v.Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105. Appellee can prevail on its motions for summary judgment only if: (1) no genuine issue of material fact remains to be litigated; (2) it appears from the evidence that reasonable minds can reach but one conclusion and that conclusion is adverse to the nonmoving party; and (3) the moving parties are entitled to summary judgment as a matter of law. Civ.R. 56(C); Horton v. HarwickChem. Corp. (1995), 73 Ohio St.3d 679, paragraph three of the syllabus. In reviewing a grant of summary judgment, the appellate court reviews the entire record in the light most favorable to the party opposing the motion. Engel v. Corrigan (1983), 12 Ohio App.3d 34, paragraph one of the syllabus. Any doubt must be resolved in favor of the nonmoving party, and evidence must be construed against the moving party. Norris v.Ohio Std. Oil Co. (1982), 70 Ohio St.2d 1, 2.
 {¶ 11} In meeting this standard, appellee has the burden to prove that no genuine issue of material fact exists by informing the trial court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a triable issue on any or all of the essential elements of the appellant's claims. Dresher v. Burt (1996),75 Ohio St.3d 280, 293. Once appellee satisfies this initial burden, the burden shifts to the appellant to set forth specific facts, in the manner prescribed by Civ.R. 56(C), indicating that a genuine issue of material fact exists for trial. Id.
 {¶ 12} Discrimination Claim
 {¶ 13} In her first assignment of error, appellant challenges the trial court's grant of summary judgment on her claim that appellee terminated her employment on the basis of racial discrimination. Ohio applies federal standards developed pursuant to the Civil Rights Act of 1964, 42 U.S.C. 2000e-2,[1] to interpret Ohio law prohibiting discrimination on the basis of race. Little Forest Med. Ctr. of Akron v.Ohio Civ. Rights Comm. (1991), 61 Ohio St.3d 607, 609-610. See, alsoMitchell v. Toledo Hospital (1992), 964 F.2d 577, 582. Thus, a plaintiff may either provide direct evidence of discrimination or establish a prima facie case of discrimination through indirect evidence by following the burden-shifting standard established in McDonnell Douglas Corp. v. Green
(1973), 411 U.S. 792. Byrnes v. LCI Communications Holdings Co. (1996),77 Ohio St.3d 125, 128.
 {¶ 14} Here, appellant does not assert direct evidence of discrimination; rather, appellant argues that she has established a prima facie case of racial discrimination with indirect evidence as permitted by McDonnell Douglas Corp., supra. Appellant additionally argues that, due to the trial court's misapplication of the McDonnell framework, summary judgment in favor of appellee was improper.
 {¶ 15} Appellant points to the trial court's citation and application of our decision in Ferguson v. Lear Corporation (2003),155 Ohio App.3d 677, wherein we stated that in order to raise an inference of discriminatory intent, a plaintiff alleging racial discrimination must show: "(1) she is a racial minority, (2) she suffered an adverse employment action, (3) she was qualified for the position, and (4) a comparable, non-protected[2] person was treated more favorably." Id. at 683, citing McDonnell Douglas Corp. v. Green, supra. Appellant argues that the trial court misapplied our holding in Ferguson to limit the permissible ways in which a plaintiff may demonstrate discriminatory intent through indirect evidence. Because, appellant argues, the trial court only examined whether she had demonstrated that appellee had treated comparable, nonprotected persons more favorably than her, summary judgment was improper.
 {¶ 16} Appellant is correct in that the trial court took Ferguson out of context. In Ferguson, the plaintiff alleged that she suffered adverse employment actions in the form of less favorable work assignments and unequal treatment on the job — she was not, however, terminated. Where a plaintiff alleges that the adverse employment action was termination, a plaintiff need only show her employer filled her job position by employing a nonprotected person in order to satisfy the fourth prong of theMcDonnell test. The standard in a case of indirect evidence of discriminatory intent when a plaintiff is terminated is stated thusly: "[A] plaintiff can establish a prima facie case of discrimination by showing that (1) she was a member of a protected class; (2) she was discharged; (3) she was qualified for the position; and (4) she was replaced by a person outside the class." Mitchell v. Toledo Hosp.
(1992), 964 F.2d 577, 582.
 {¶ 17} Thus, we agree that appellant may demonstrate the fourth prong of a prima facie case, and thus may raise an inference of discriminatory intent, if she can show that upon her discharge, she was replaced by a person outside her class — that is, a non-African American. "Establishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee." Texas Dept. of CommunityAffairs v. Burdine (1981), 450 U.S. 248, 254.
 {¶ 18} Only after a plaintiff establishes a prima facie case should a court continue analyzing a claim pursuant to the McDonnell
burden-shifting framework. Once a plaintiff establishes a prima facie case, then the burden of proof shifts to her employer to rebut the inference of discrimination by articulating a legitimate, non-discriminatory reason for her termination. Mitchell, supra, at 584; see, also McDonnell, supra, at 802. If the employer carries this burden, then the plaintiff must be provided with the opportunity to prove, by a preponderance of the evidence, that the "legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Mitchell, supra, at 584; see, also Texas Dept. ofCommunity Affairs, supra, stating, "[t]he burden that shifts to the defendant, therefore, is to rebut the presumption of discrimination by producing evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason." In the pretext analysis, a plaintiff has the opportunity to "demonstrate that the proffered reason was not the true reason for the employment decision."Texas Dept. of Community Affairs, supra at 256. "This burden now merges with the ultimate burden of persuading the court that she has been the victim of intentional discrimination. She may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Id.
 {¶ 19} Throughout this analysis, although the burden of production shifts, the burden of persuasion rests, at all times, with the plaintiff. Burdine; see, also, St. Mary's Honor Center v. Hicks (1993),509 U.S. 502, paragraph (a) of the syllabus. "In a Title VII case, the allocation of burdens and the creation of a presumption by the establishment of a prima facie case is intended progressively to sharpen the inquiry into the elusive factual question of intentional discrimination." Texas Dept. of Community Affairs, supra at 256.
 {¶ 20} In short, we can find that, construing all inference in appellant's favor, she has satisfied the fourth prong of the McDonnell
prima facie case by showing that she was replaced by a non-African American. However, the trial court's misapplication of Ferguson does not, contrary to appellant's urgings, require reversal. In our de novo review of summary judgment matters, we may still inquire whether the judgment may be affirmed on alternative grounds. See Joyce v. GeneralMotors Corp. (1990), 49 Ohio St.3d 93, 96, citing Agricultural Ins. Co.v. Constantine (1944), 144 Ohio St. 275, 284.
 {¶ 21} In its opinion, the trial court noted that the parties debate whether appellant was otherwise qualified for the position, a prong necessary to establish a prima facie case of racial discrimination. However, we conclude that, presuming appellant can establish a prima facie case, we can alternatively affirm summary judgment on grounds that appellant cannot rebut appellee's legitimate justifications for her termination by showing pretext.
 {¶ 22} Upon review of the deposition testimony, affidavits, and exhibits, we find that appellee advanced a legitimate, nondiscriminatory justification for appellant's discharge. To briefly summarize, the evidence shows that during the last year of appellant's tenure as site manager, the number of vacancies at Heathbriar increased from a low of 92.7 percent occupancy rate to a 76 percent occupancy rate the month appellant was terminated; Mr. Kawa, president of Whitehurst, testified in deposition that although occupancy rates fluctuate throughout a year, the occupancy trends during appellant's tenure were in opposition to past normal business cycles; appellee presented documentation of lessee complaints regarding the manner in which appellant treated them, including a tenant's letter; Kawa testified that he had received an inordinate number of tenant complaints regarding appellant's conduct; in August of 2000, Kawa issued a written warning to appellant detailing incidents where appellant demonstrated a lack of professionalism toward lessees and vendors; the maintenance person testified that several tenants had approached him with comments regarding appellant's manner of dealing with tenant complaints; and for one week while appellant was absent, her substitute documented comments from several tenants who complained about the way appellant had handled their concerns.
 {¶ 23} In order to demonstrate that an employer's offered justifications are a "cover up" for a discriminatory intent or motive in her discharge, appellant can use circumstantial evidence, including the ultimate number of persons of her class retained by her employer, to show that her employer's explanations are "unworthy of credence." Hicks,509 U.S. at 508. Here, appellant alleges that after her termination, appellee retained no African-Americans in its employ, at least not in senior positions comparable to appellant's. When questioned regarding the number of African-Americans in appellee's employ during 2000-2001, Kawa stated that he did not and could not remember whether there were any. Accepting appellant's assertion as fact, and accepting that this fact qualifies as evidence supporting pretext, we find that standing alone, this fact does not demonstrate that appellee's justifications are a "cover up" for discriminatory motives. Hicks, 509 U.S. at 508.
 {¶ 24} Since we find that appellee's articulated justification for appellant's termination rebuts the inference of discrimination raised by appellant's prima facie case, the inference "drops from the case." TexasDept. of Community Affairs, 450 U.S. at 255. Furthermore, appellant has not revived the inference, through a demonstration that a genuine issue of material fact exists as to pretext. Appellant's first assignment of error is therefore not well taken.
 {¶ 25} Wrongful Termination in Violation of Public Policy
 {¶ 26} For ease of analysis, we next address appellant's third assignment of error. The trial court held that since appellant could not prevail on her racial discrimination claim, she could not prevail on her claim that appellee terminated her in violation of public policy. We agree.
 {¶ 27} "To state a claim of wrongful discharge in violation of public policy, a plaintiff must allege facts demonstrating that the employer's act of discharging him contravened a `clear public policy.' (Greeley v.Miami Valley Maintenance Contractors, Inc. (1990), 49 Ohio St.3d 228,551 N.E.2d 981, affirmed and followed.)" Painter v. Graley (1994),70 Ohio St.3d 377, paragraph two of the syllabus.
 {¶ 28} In her third assignment of error, appellant argues that the trial court failed to examine her claim under the correct standard; since the trial court decided her race discrimination claim under a misapplication of the law, the error must have tainted her claim of wrongful discharge. When faced with a charge of wrongful termination, courts must consider whether:
 {¶ 29} "1. That clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the clarity element).
 {¶ 30} "2. That dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the jeopardy element).
 {¶ 31} "3. The plaintiff's dismissal was motivated by conduct related to the public policy (the causation element).
 {¶ 32} "4. The employer lacked overriding legitimate business justification for the dismissal (the overriding justification element)." (Emphasis sic.) Id. at 384.
 {¶ 33} Since we have determined that appellant has not raised a genuine issue of material fact concerning pretext, appellant's wrongful discharge claim must founder on the necessary element of causation. That is, since appellant advances Ohio's strong public policy proscribing discrimination on the basis of race as the clarity element, she must show that her termination was motivated by conduct related to racial discrimination; this she has not done, as she has not overcome her employer's legitimate justifications for her termination by advancing a genuine issue of material fact as to pretext. Accordingly, summary judgment for appellee on the wrongful discharge claim was proper, and appellant's third assignment of error is not well taken.
 {¶ 34} Breach of Implied Contract
 {¶ 35} Appellant's second assignment of error focuses upon the trial court's conclusion that she was an at-will employee and that therefore, no contract, implied or otherwise, was breached by her termination. The general rule in Ohio is that, in the absence of a contract, individuals are employed on an "at-will" basis, and employers and employees have the right to terminate the employment relationship for any reason or no reason (as long as it is not an illegal reason, i.e., proscribed discrimination). There is "a strong presumption in favor of a contract terminable at will unless the terms of the contract or other circumstances clearly manifest the parties' intent to bind each other."Henkel v. Educational Research Council (1976), 45 Ohio St.2d 249, 255. Appellant argued before the trial court and again on appeal that appellee's employee handbook, which she signed upon her employment, created an implied contract which removed her from at-will employment.
 {¶ 36} In Ohio, employee handbooks, company policies, and oral representations can constitute evidence of an implied employment contract removing a plaintiff from the set of at-will employees. Mers v. DispatchPrinting (1985), 19 Ohio St.3d 100, 104, citing Hedrick v. Center forComprehensive Alcoholism Treatment (1982), 7 Ohio App.3d 211; Helle v.Landmark, Inc. (1984), 15 Ohio App.3d 1. "There is, however, a heavy burden on the party relying on an implied contract to demonstrate the existence of each element necessary to the formation of a contract including, inter alia, the exchange of bilateral promises, consideration and mutual assent." Sagonowsky v. The Andersons, Inc., 6th Dist. No. L-03-1168, 2005-Ohio-326, ¶ 14, internal citations omitted. "Generally, where the employee furnishes no consideration other than his or her services incident to the employment, the relationship amounts to an indefinite general hiring terminable at the will of either party unless the terms of the contract or other circumstances clearly manifest the parties' intent to bind each other." Id., citing Pyle v. Ledex, Inc.
(1988), 49 Ohio App.3d 139, 141.
 {¶ 37} In support of her argument that a contractual relationship was formed which removed her employment from at-will status, appellant only advances statements made in appellee's employee handbook and the handbook's lack of a clause disclaiming contractual intent. This argument resembles the argument advanced by the employee terminated inSagonowsky. Following Phung v. Waste Management Inc., 23 Ohio St.3d 100, (overruled on other grounds by Kulch v. Structural Fibers, Inc. (1997),78 Ohio St.3d 134) and Henkel, 45 Ohio St.2d at 254-255, we held that, notwithstanding the absence of a disclaimer, "in the absence of a contract which provides for a specific duration of employment, an employee is presumed to be employed at will, terminable at any time, with or without cause." Sagonowsky, supra, at ¶ 49.
 {¶ 38} Appellant does not advance any evidence that her employment was predicated upon any specific duration. Therefore, her employment is presumed to be at will. However, because appellant in correct insofar as, on occasions, representations made in handbooks in connection with disciplinary policies will create issue of fact regarding an employment contract, see cases cited by Sagonowsky, supra, at ¶ 65, we examine appellee's handbook and discipline procedures. In our examination, we note that, "[a]n employee handbook may be considered with regard to questions of whether an implied contract exists, but its presence alone is not dispositive." Abel v. Auglaize County Highway Dept. (N.D. Ohio, 2003),276 F.Supp.2d 724, 742 (applying Ohio law).
 {¶ 39} Appellee's employee "handbook" is titled "Policies and Procedures" and it details procedures to be followed when renting apartments and maintaining the leasing offices; it also contains, inter alia, work descriptions for various positions and details vacation and sick pay. Appellant focuses her arguments upon three sections titled "General Rules and Regulations," "Consideration in Administering Discipline and Discharge," and "The Disciplinary Process." Kawa admitted in deposition that those sections applied to appellant's position; Kawa stated that he did not believe it was necessary to give appellant written reasons for her termination and that verbally discharging her was sufficient.
 {¶ 40} The disciplinary sections of the manual are in outline form. Under a section labeled "Guidelines," it states:
 {¶ 41} "1. Constructive discipline should be followed in administering discipline.
 {¶ 42} "2. Disciplinary actions must be taken for cause, and both the rule and the discipline involved must be reasonable.
 {¶ 43} "3. Rules must be made known to employees.
 {¶ 44} "4. Due process, a full and fair investigation of the facts, must precede the administration of discipline.
 {¶ 45} "5. Rules and disciplinary actions must be nondiscriminatory."
 {¶ 46} The above section, when read alone, gives the impression that, contrary to the at-will rule, employees may only be discharged for cause — especially given the second statement, phrased in the imperative. This "for cause" rule conflicts, however, with the title of that section ("guidelines") and also with the second section, labeled "Steps to be followed when dealing with problem employees (Not necessarily in this order):"
 {¶ 47} "1. Oral warning that is not recorded in the employees personnel file. [sic]
 {¶ 48} "2. Oral warning that is recorded in the employee's personnel file.
 {¶ 49} "3. Written reprimand, signed by manager and employee.
 {¶ 50} "4. Suspension
 {¶ 51} "5. Discharge"
 {¶ 52} Since this section states that disciplinary actions may be taken in any order, one may presume that a discharge may precede any other disciplinary action and no oral or written warnings or reprimands are required before discharge. Thus, contrary to cases in which an implied contract was found, appellee's disciplinary procedures are not "progressive," in that certain steps must be taken. Appellee, citingHanley v. Riverside Methodist Hospitals (1991), 78 Ohio App.3d 73, 78, argues that where language indicates that disciplinary procedures are guidelines and not mandatory, the employer is not contractually bound to follow them when discharging an otherwise at-will employee.
 {¶ 53} Citing Golen v. Village of Put-In-Bay et al., (N.D. Ohio, 2002), 222 F.Supp.2d 924, appellant argues that where a employee handbook (1) contains no disclaimer of contractual intent and (2) contains "specific" and "mandatory" language for disciplinary procedures, that a contract is created insofar as the parties intended to be bound, and that breach of contract will lie where the disciplinary procedures are not followed. Id. at 934. Appellant, as in Golem, did acknowledge her receipt of the manual and Kawa acknowledged that appellee advised employees that the manual would be followed in disciplinary matters. Appellant argues that the prior written warning, given in accordance with the manual's procedures, gave rise to a "course of conduct" that buttresses a conclusion that an implied contract existed.
 {¶ 54} In support of her contention that the manual is specific and mandatory, appellant points to the third and last section, which states, "Steps to be followed when discharging an employee" and notes that it requires a person discharging an employee to notify the employee in writing, and that the notice "should stated again why the employee has been fired and when his or her last working day will be." It also states, "Follow procedures carefully and thoroughly. This will protect the manager and well as the employee." Appellant states that this specific and mandatory language creates a contract which was breached by the verbal, not written, manner of her termination.
 {¶ 55} The circular nature of this argument would eradicate the use of employment manuals or policies and procedure manuals in at will employment relationships. That is, accepting appellant's argument, any time an employer chose to list disciplinary procedures in an employment manual, and then abided by its agreement to follow those procedures, a disciplined employee would rise above her at will status and gain the employment protection of a contract. Regarding appellant's termination, we note that the August 18, 2000, written warning concerning "gross insubordination" could have resulted in discharge according to the same manual; additionally, the section regarding "steps to be followed when discharging an employee," when read together with the preceding two sections, appears to be advisory and aspirational in nature. Certainly, these disciplinary policies may have been written more clearly; however, these policies do not amount to an unambiguous promise upon which any reliance would be reasonable. As in Bartlett v. Drake Memorial Hospital
(1991), 75 Ohio App.3d 334, the discipline policy contains only "unilateral statements of * * * procedure." Id. at 338. In short, though Kawa acknowledged that appellee "attempts to follow" the policy and advised employees that it would follow policy, the disciplinary policy does not create an implied contract removing appellant's employment from its at-will status.
 {¶ 56} Thus, we find appellant's second assignment of error not well taken.
 {¶ 57} Conclusion
 {¶ 58} For the foregoing reasons, the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is hereby ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Singer, P.J., Skow, J., Parish, J., Concur.
[1] Section 703(a)(1) states: "It shall be an unlawful employment practice for an employer: (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C.A. § 2000e-2.
[2] Although courts have traditionally termed a person not of the plaintiff's class a "nonprotected" person, we note that the anti-discrimination statutes, as well as the Equal Protection Clauses, protect all persons regardless of race; therefore, the term "nonprotected" person is a misnomer which tends, in our opinion, to perpetuate the myth that only some persons derive employment protections from the Civil Rights Act. Rather, "nonprotected" more properly denotes a person in a class other than the plaintiff. Thus, the particular class into which a plaintiff falls ("C") renders all other classes ("non-C") "nonprotected" in the lingual scheme of discrimination law.