[Cite as *Mattessich v. Weathersfield Twp.*, 2016-Ohio-458.]

# IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| RICHARD MATTESSICH, | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| - vs - | : | **CASE NO. 2015-T-0068** |
| WEATHERSFIELD TOWNSHIP, | : | |
| Defendant-Appellee. | : | |

Civil Appeal from the Trumbull County Court of Common Pleas, Case No. 2014 CV 00233.

Judgment: Affirmed.

*John F. Myers,* 960 Wye Drive, Akron, OH 44303 (For Plaintiff-Appellant).

*Abraham Cantor,* Johnnycake Commons, 9930 Johnnycake Ridge Road, #4-F, Concord, OH 44060, and *Cherry Lynne Poteet,* Daniel Daniluk, LLC, 1129 Niles-Cortland Road, S.E., Warren, OH 44484 (For Defendant-Appellee).

DIANE V. GRENDELL, J.

{¶1} Plaintiff-appellant, Richard Mattessich, appeals from the Judgment Entry of the Trumbull County Court of Common Pleas, granting summary judgment in favor of defendant-appellee, Weathersfield Township, and dismissing Mattessich's Complaint. The issue to be decided by this court is whether summary judgment as to a claim of disability discrimination can be granted when the plaintiff fails to present evidence that the basis provided for his firing was false. For the following reasons, we affirm the decision of the lower court.

**{¶2}** On February 3, 2014, Mattessich filed a Complaint in the Trumbull County Court of Common Pleas against Weathersfield Township.[1] It alleged that Mattessich was unlawfully terminated by Weathersfield Township following seventeen years of service as a police officer. He asserted that he was disabled, was required to perform multiple fitness for duty examinations prior to returning to work from leave, and that, when he did return, he had to complete a "temporary schedule for evaluation" which was based on a perceived risk he presented due to his disabling condition.

**{¶3}** Count One raised a violation of the Ohio Civil Rights Act, based upon the contention that Mattessich was fired due to discrimination because of his disability or a perceived disability. Count Two was for Defamation, Count Three raised a claim of "'False Light' Invasion of Privacy" for releasing private medical information, and Count Four was for Intentional Infliction of Emotional Distress.

**{¶4}** Weathersfield Township filed its Answer on March 5, 2014.

**{¶5}** Weathersfield Township filed a Motion for Summary Judgment on February 13, 2015. Regarding the disability claim, it argued that no discrimination occurred, as there was no evidence that Mattessich was fired due to a disability but, instead, the evidence showed that he was terminated based on his deception. In opposition, Mattessich argued that he established a prima facie case that Weathersfield Township regarded him as disabled, given its knowledge of his possible psychological problems.

**{¶6}** The following facts regarding the events leading to Mattessich's termination were adduced through testimony presented at a December 20, 2011

---

1. This was a refiling of a prior case, Case No. 2012 CV 1049.

hearing before the Weathersfield Township Board of Trustees and depositions taken in the present matter and filed with the summary judgment motions:

{¶7} Mattessich was an officer with the Weathersfield Township Police Department since 1994. On the night shift beginning December 12, 2010, an incident allegedly occurred between Mattessich and another officer, George Antonell. According to Captain Michael Naples, Mattessich, the officer in charge that night, informed him that Antonell had been late to work, failed to attend roll call, and had an "attitude" regarding the issue.

{¶8} Both Antonell and Mattessich interviewed for a sergeant's position the following day. According to Captain Naples and Chief Joseph Consiglio, when confronted with these allegations, Antonell denied them, stating that he had not been late to work and did not see Mattessich that night. Officer Antonell testified that he arrived on time, at approximately 11:00 p.m. on December 12, waited 10-15 minutes for "roll call", which did not occur, and left when Mattessich had not yet arrived. At the hearing, Antonell testified that he did not see, speak to, or have a confrontation with Mattessich on that evening, nor was he insubordinate. Antonell stated in his deposition that he was sure they had some contact during the shift, although he did not elaborate on this point. Mattessich testified that he did interact with Antonell on that shift, when they briefly discussed a traffic matter.

{¶9} Regarding this incident, Mattessich testified that he had arrived at the station around 11:30 p.m., after Antonell had left, because of several duties he had to complete. According to Mattessich, he did not tell Captain Naples that Antonell was late but only that he had not been there for roll call. On a prior date, Mattessich had told Chief Consiglio that Antonell was sometimes late and that, when Mattessich discussed

3

this matter with Antonell directly, he stated he did not have a policy and procedure manual. Mattessich believed there had merely been a misunderstanding as to his comments.

{¶10} Captain Naples investigated the incident by viewing records and video, which showed Antonell arriving in the squad room at 11:02 p.m. and Mattessich at approximately 11:32 p.m. There was no video of any interaction between Antonell and Mattessich.

{¶11} Captain Naples prepared a memorandum to Chief Consiglio describing his findings and conclusion that Mattessich had been untruthful about the incident. According to the memorandum, Mattessich denied speaking with Antonell but also described confronting him. Captain Naples clarified that Mattessich had told him he talked to Antonell after Antonell arrived late for roll call and did not speak to him the rest of the shift.

{¶12} Chief Consiglio noted that he had received a phone call on December 13, 2010, from Mattessich, who was upset that Antonell, a probationary officer, was being permitted to interview for sergeant. When the matter with Antonell was discussed with Mattessich, he stated that there was a misunderstanding and agreed that "Officer Antonell got in his head about [the] promotion." Based on the foregoing facts, both Captain Naples and Chief Consiglio believed the conversation where Antonell expressed an attitude toward Mattessich never occurred and Mattessich had lied.

{¶13} Due to this incident, Chief Consiglio considered recommending the termination of Mattessich but chose not to based on his years of service and work performance. Chief Consiglio wanted to give him a second chance.

4

{¶14} As a result, Mattessich was suspended for 30 days. He filed a grievance contesting the suspension, and the matter was resolved by a written agreement. Mattessich testified that he was told three officers were going to make statements against him, which led to him entering into the agreement.

{¶15} The agreement stated that there was no admission of guilt by either party and that the disciplinary suspension would terminate on February 24, 2011. It also included a clause requiring Mattessich to have a psychological evaluation. In the evaluation, Dr. Michael Heilman determined that Mattessich lacked the "cognitive ability and emotional stability" to function as a police officer at that time. Mattessich subsequently went on sick leave until September 2011. Several individuals, including Chief Consiglio, testified that there was no requirement that Mattessich complete counseling while on leave, although Dr. Heilman recommended it.

{¶16} Regarding his mental health status, in 2011, Mattessich saw Dr. William Diorio for depression. His general physician, Dr. Cayovec, prescribed him medication for depression. Mattessich believed the depression affected his job at the time it began, around December 2010.

{¶17} On September 6, 2011, Dr. Heilman found Mattessich fit to return to duty. Following testing with other doctors required by the department, Mattessich returned to duty on September 19, 2011.

{¶18} According to Mattessich, when he returned to work in September 2011, he was fine. Upon beginning work again, some of his duties had been changed or removed and his police car had been replaced. He also believed he was scheduled to "odd" shifts that were not like other officers'.

{¶19} Captain Naples testified that he was not told why Mattessich was on medical leave. When Mattessich returned to duty, Captain Naples had concerns that he was "a little hesitant, timid, or lacked some confidence." Chief Consiglio was worried about how Mattessich would adjust to coming back to work. Officer Kris Hodge believed that Mattessich seemed timid and lacked confidence. When Hodge went on a call with Mattessich, he was "dazed" and "wasn't with it."

{¶20} These circumstances led to a meeting on September 27, 2011, with Chief Consiglio, Captain Naples, Officer Hodge, the director of the Weathersfield Police Department's branch of Ohio Patrolmen's Benevolent Association (OPBA) and Mattessich's "representative," Cindy Smith, a secretary/clerk for the police department, and Mattessich. According to Hodge, Chief Consiglio explained that he had concerns about Mattessich's behavior on certain calls, since he was "nervous, [and] afraid to * * * get involved," as well as "his overall safety for him and the other officers." Hodge, Captain Naples, and Chief Consiglio all presented similar testimony that, at that meeting, when asked whether he had gone to counseling while off of work, Mattessich stated that he did not.

{¶21} Chief Consiglio testified that, following the meeting where counseling was discussed, Mattessich went back to work, performed his responsibilities, and Chief Consiglio "felt confident in him having the ability to do the job." Mattessich had returned to his midnight shift because Chief Consiglio "felt he was ready to go."

{¶22} Another meeting was held on October 31, 2011, at which an e-mail was discussed, sent from Jeff Perry, Mattessich's OPBA Business Agent, to Chief Consiglio, in which he stated that Mattessich provided him with proof that he went to counseling while he was on sick leave. Chief Consiglio and Captain Naples explained that

6

Mattessich admitted to lying in the prior meeting about not attending counseling, stating when questioned, "I lied to you."

{¶23} According to the Weathersfield Township Administrator David Pugh's deposition testimony, a disciplinary meeting was held on November 8, 2011, with Chief Consiglio and others in attendance, after which it was recommended that Mattessich be terminated. Minutes of this meeting were taken, which noted that Mattessich had depression and had been on sick leave. The notes stated that the Chief had explained that Mattessich had been "shaking on calls," stepped back, failed to take the lead, and his work had been substandard. He also noted that police officers who had lied were dismissed in the past. Fire Chief Randy Pugh mentioned that Mattessich could resign and file for disability and that he "should have filed for disability." Throughout the meeting minutes, concerns were expressed about the inability to trust an officer who is dishonest.

{¶24} On November 21, 2011, a "pre-termination" meeting was held with Chief Consiglio, Captain Naples, Hodge, Perry, Mattessich, Antonell, and Pugh. Pugh testified that, at that meeting, Mattessich admitted lying to Chief Consiglio about the counseling issue. Antonell confirmed this admission occurred. After that meeting a recommendation was made to the Board of Trustees to terminate his employment.

{¶25} Chief Consiglio recommended Mattessich's termination based on him "not telling the truth a couple of times," since he was concerned about Mattessich's honesty and integrity in performing his duties. He would not tolerate having a dishonest officer on the police force. Captain Naples also testified that trust is important with police officers, given their interactions with the public, the court system, and others within the department. Prior to these incidents, Mattessich's performance had been "satisfactory."

While there were concerns with his performance when he returned, Chief Consiglio wanted to give Mattessich an opportunity to prove that he was capable of doing the job, but when Mattessich lied, he decided termination was necessary.

{¶26} When asked at the Board of Trustees hearing if he admitted to lying at the November meeting, Mattessich testified "I'd say yes." He later stated, however, that he did not lie and that he said "it was none of your business." He also explained that he did not lie "completely," since he was referring to the psychologist that the police department had sent him to, Dr. Heilman, whom he did not see during the period in question. He did go to counseling with his wife, but he did not believe that he needed to divulge that information since it was separate from the issue of whether he was seeing a counselor for work purposes. Mattessich testified that, at the meeting where counseling was discussed, he stated that he was being counseled by his personal physician, Dr. Cayovec.

{¶27} Jeffrey Perry, a business agent for the OPBA, represented Mattessich during the disciplinary proceedings in this matter. During the course of the investigation/proceedings against Mattessich, he agreed to take a lie detector test. Pursuant to Perry's memory of the results, the polygraph examiner concluded that there were indications of Mattessich being deceitful with some of his answers. Mattessich denied that this was the case.

{¶28} On December 20, 2011, a hearing was held before the Weathersfield Township Board of Trustees, at which testimony was presented pursuant to the grievance procedure in the collective bargaining agreement and pursuant to R.C. 505.492. The hearing related to the allegations and testimony outlined above. At the beginning of the hearing, Mattessich requested that it be public. Following the hearing,

8

the Board of Trustees voted to remove Mattessich and found that he committed misfeasance, malfeasance, misconduct in office, nonfeasance, and failure to obey orders.

{¶29} On June 1, 2015, the trial court granted Weathersfield Township's Motion for Summary Judgment as to all claims. In pertinent part, the court found that evidence showing Mattessich had a disability was "scant." It held that Mattessich "cannot show that the reason given for his termination from employment—his dishonesty—was false. Nor can [he] show that the dishonesty was not the actual motivation for the termination or that his dishonesty was insufficient to warrant the termination." He was unable to establish pretext, especially given that the testimony showed that honesty is "a crucial attribute of a police officer."

{¶30} Mattessich timely appeals and raises the following assignments of error:

{¶31} "[1.] The trial court erred in finding that Appellant failed to demonstrate a prima facie case that he was regarded as disabled by Appellee.

{¶32} "[2.] The trial court erred in finding that Appellant had not demonstrated by a preponderance of the evidence that Appellee's stated reasons for termination were pretextual."

{¶33} Pursuant to Civil Rule 56(C), summary judgment is proper when (1) the evidence shows "that there is no genuine issue as to any material fact" to be litigated, (2) "the moving party is entitled to judgment as a matter of law," and (3) "it appears from the evidence * * * that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence * * * construed most strongly in the party's favor."

9

{¶34} A trial court's decision to grant summary judgment is reviewed by an appellate court under a de novo standard of review. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). "A de novo review requires the appellate court to conduct an independent review of the evidence before the trial court without deference to the trial court's decision." (Citation omitted.) *Peer v. Sayers*, 11th Dist. Trumbull No. 2011-T-0014, 2011-Ohio-5439, ¶ 27.

{¶35} In the present matter, Mattessich appeals the grant of summary judgment in favor of Weathersfield Township only as it relates to the disability discrimination claim (Count One), based on his depression.

{¶36} Pursuant to R.C. 4112.02(A), it is an "unlawful discriminatory practice" for an employer "because of the * * * disability * * * of any person, to discharge without just cause * * * or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment." The term "disability" is defined as "a physical or mental impairment that substantially limits one or more major life activities, including the functions of caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working; a record of a physical or mental impairment; or being regarded as having a physical or mental impairment." R.C. 4112.01(A)(13). A person is protected under the disability discrimination laws, even if he or she is not disabled, if the employer regards the person as being disabled. *Columbus Civ. Serv. Comm. v. McGlone*, 82 Ohio St.3d 569, 572, 697 N.E.2d 204 (1998).

{¶37} Since Ohio's disability discrimination statute is similar to the federal Americans with Disabilities Act, Ohio courts have considered federal cases for guidance

10

in interpreting the Ohio statute. *Id.* at 573; *Barreca v. Travco Behavioral Health, Inc.*, 11th Dist. Trumbull No. 2013-T-0116, 2014-Ohio-3280, ¶ 19.

**{¶38}** "To establish a prima facie case of disability discrimination, the person seeking relief must demonstrate (1) that he or she was disabled, (2) that an adverse employment action was taken by an employer, at least in part, because the individual was disabled, and (3) that the person, though disabled, can safely and substantially perform the essential function of the job in question." *Hammercheck v. Coldwell Banker First Place Real Estate*, 11th Dist. Trumbull No. 2007-T-0024, 2007-Ohio-7127, ¶ 22; *Hazlett v. Martin Chevrolet, Inc.*, 25 Ohio St.3d 279, 281, 496 N.E.2d 478 (1986).

**{¶39}** Once the plaintiff establishes a prima facie case of disability discrimination, the burden shifts to the employer to set forth some "legitimate, nondiscriminatory reason" for the employee's discharge. *Plumbers & Steamfitters Joint Apprenticeship Commt. v. Ohio Civ. Rights. Comm.*, 66 Ohio St.2d 192, 197, 421 N.E.2d 128 (1981). "Legitimate, nondiscriminatory reasons for the action taken by the employer may include, but are not limited to, insubordination on the part of the employee claiming discrimination, or the inability of the employee or prospective employee to safely and substantially perform, with reasonable accommodations, the essential functions of the job in question." *Hood v. Diamond Prods.*, 74 Ohio St.3d 298, 302, 658 N.E.2d 738 (1996). "[I]f the employer establishes a nondiscriminatory reason for the action taken, then the employee or prospective employee must demonstrate that the employer[']s stated reason was a pretext for impermissible discrimination." *Id.*

**{¶40}** To establish pretext for a claim under the Civil Rights Act, "a plaintiff must demonstrate that the proffered reason (1) has no basis in fact, (2) did not actually motivate the employer's challenged conduct, or (3) was insufficient to warrant the

challenged conduct." (Citation omitted.) *Cavins v. S&B Health Care, Inc.*, 2nd Dist. Montgomery No. 26615, 2015-Ohio-4119, ¶ 92; *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir.2000). "[T]he plaintiff must produce sufficient evidence from which the trier of fact could reasonably reject the employer's explanation and infer that the employer intentionally discriminated against him." *Knepper v. Ohio State Univ.*, 10th Dist. Franklin No. 10AP-1155, 2011-Ohio-6054, ¶ 12; *Johnson v. Kroger Co.*, 319 F.3d 858, 866 (6th Cir.2003). "A reason cannot be proved to be a pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason." *Knepper* at ¶ 12; *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

**{¶41}** We will first address Mattessich's second assignment of error, as it is dispositive of the appeal. In his second assignment of error, Mattessich argues that he demonstrated that the firing was pretextual adequately to survive summary judgment.

**{¶42}** In response to Mattessich's claim of discrimination, Weathersfield Township provided testimony from multiple individuals that Mattessich was fired for lying to his superiors, including the Police Chief and the Captain. Under these circumstances, it was then incumbent upon Mattessich to demonstrate that this reason was a pretext for the actual basis for his discriminatory firing, a perceived disability related to his depression.

**{¶43}** While there was testimony presented regarding Mattessich's history and issues related to his depression, this was generally given to provide background into the basis of the lie he told related to the counseling, not as a basis for his firing. Chief Consiglio stated that he wanted to work with Mattessich, who had demonstrated he was capable of returning to work. While there was a meeting shortly after Mattessich came

back from leave to discuss his performance, Chief Consiglio subsequently returned him to his midnight shift and believed all issues were resolved. This occurred prior to the discovery that Mattessich had lied about the counseling issue. Mattessich points to no testimony or evidence that contradicted the explanation that the firing was based solely on the incident of lying, especially when considering the prior incident of lying for which he had been suspended.

{¶44} It is also not clear that the statements about Mattessich's performance when he returned from leave, i.e., that he was hesitant or lacked confidence, had any relationship with the asserted disability of depression. It is not unreasonable that, after an extended leave, the police department was concerned about ensuring Mattessich was able to perform his job properly. There is again no evidence that his job performance or disability was the reason he was terminated.

{¶45} As noted above, in order to advance a valid claim that the firing was pretextual, Mattessich was required to demonstrate that the reason for his firing, the lie or lies he told, was false. He fails to do so when he can point to no evidence contradicting the testimony of various officers that he was fired solely for this reason. *See Noday v. Mahoning Cty. Sheriff's Dept.*, 7th Dist. Mahoning No. 03-MA-203, 2005-Ohio-4682, ¶ 47 (in a discrimination case under R.C. 4112.02(A), where sexist statements were made by the sheriff toward the employee, it did not rebut the showing of why the employer's discipline was handled in the manner that it was, which was unrelated to a discriminatory purpose). More importantly, Mattessich himself admitted in his own testimony before the Board of Trustees that he had lied, and other witnesses testified that they had heard him admitting to lying during a past meeting. While he now argues that he had disclosed counseling from his primary care physician when he was

13

questioned about counseling, there is repeated testimony from other individuals and Mattessich himself that he did lie. Mattessich essentially asks us to find an issue of material fact exists when he has already admitted, under oath, that he lied.

{¶46} Further, multiple witnesses, including Chief Consiglio, provided testimony establishing why lying would provide grounds for termination. They explained the consequences of being untruthful, including a lack of trust from the community and possible issues with officer testimony in a defendant's trial. This further bolstered the truthfulness of the basis for Mattessich's termination.

{¶47} The mere fact that individuals within the police department knew of Mattessich's problems with depression does not mean that pretext exists, since it does not establish that Mattessich was fired because of that disability or that the reason for firing him was false. *Ceglia v. Youngstown State Univ.*, 2015-Ohio-2125, 38 N.E.3d 1222, ¶ 51 (10th Dist.) (the fact that an employee's health was discussed on several occasions was not enough to establish that he was fired on that basis). A conclusion that Mattessich was fired based on his disability would require making an assumption that is not supported by the evidence in the record. *Morrissette v. DFS Servs.*, LLC, 10th Dist. Franklin No. 12AP-611, 2013-Ohio-4336, ¶ 41 (summary judgment is proper where a plaintiff failed to present evidence of pretext beyond allegations and conclusory statements, given the lack of a link between allegedly inappropriate questions asked and evidence that the employee was fired discriminatorily).

{¶48} Further, the "honest belief" rule applied in federal courts has also been applied in Ohio. An employer's "honest belief" precludes a finding of pretext "if the employer honestly, but mistakenly, believes in the proffered reason given for the * * * decision at issue * * *." (Citations omitted.) *Ceglia* at ¶ 45; *Smith v. Chrysler Corp.*, 155

14

F.3d 799, 806 (6th Cir.1998). "The key inquiry in assessing whether an employer holds such an honest belief is 'whether the employer made a reasonably informed and considered decision before taking' the complained-of action." *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 598-99 (6th Cir.2007), citing *Smith* at 807.

{¶49} Even if the Board of Trustees was mistaken in believing that lying was the actual cause for the recommendation to fire Mattessich, all of the evidence presented to the Board established this was the basis. It held a hearing, allowed Mattessich to present his case, considered the results of the police department investigation of the lying incidents, and reviewed related exhibits. It made a reasonably informed decision in terminating Mattessich's employment. *King v. Jewish Home*, 178 Ohio App.3d 387, 2008-Ohio-4724, 898 N.E.2d 56, ¶ 12 (1st Dist.) ("The relevant inquiry is whether, after construing the evidence most strongly in [the nonmoving party's] favor, reasonable minds could have only concluded that" the employer believed that the employee lied. When an investigation and evidence before the employer showed that the lie occurred and no evidence disproved this, there was not sufficient evidence to create a question of fact regarding the employer's "honest belief.").

{¶50} While Mattessich notes that "a perception that [he] was disabled permeated the Disciplinary Committee meeting which led to the decision to terminate him," Mattessich was terminated by the Board of Trustees following its hearing and consideration of the matter. While there were apparently statements at that Disciplinary Committee meeting about whether he should be on disability retirement, this evidence was not presented to the Board of Trustees in its hearing through an exhibit or otherwise. Regardless, the statements in the committee meeting, that Mattessich could or should have filed for disability, made by the Fire Chief, and Chief Consiglio's

15

response that "we opened the door for that," are not indicative of any belief that Mattessich should be fired for his depression. As noted above, the main discussion at that meeting related to the untrustworthiness of Mattessich and the danger of having untrustworthy officers on the police force.

{¶51} Based on the foregoing, we find that Mattessich failed to demonstrate pretext sufficient to survive summary judgment.

{¶52} The second assignment of error is without merit.

{¶53} In his first assignment of error, Mattessich argues that the trial court erred in finding that he failed to demonstrate a prima facie case that he was regarded as disabled by Weathersfield Township. Since Mattessich failed to present evidence to disprove Weathersfield Township's legitimate basis for firing him, whether he was disabled or perceived to be disabled is irrelevant and this assignment of error is moot.

{¶54} The first assignment of error is without merit.

{¶55} For the foregoing reasons, the Judgment Entry of the Trumbull County Court of Common Pleas, granting summary judgment in favor of Weathersfield Township and dismissing Mattessich's Complaint, is affirmed. Costs to be taxed against appellant.

CYNTHIA WESTCOTT RICE, P.J., concurs,

COLLEEN MARY O'TOOLE, J., dissents with a Dissenting Opinion.

_____

COLLEEN MARY O'TOOLE, J., dissents with a Dissenting Opinion.

16

**{¶56}** The majority finds the trial court properly granted summary judgment in favor of Weathersfield Township. For the reasons that follow, I disagree.

**{¶57}** "Summary judgment is a procedural tool that terminates litigation and thus should be entered with circumspection. *Davis v. Loopco Industries, Inc.*, 66 Ohio St.3d 64, 66 * * * (1993). Summary judgment is proper where (1) there is no genuine issue of material fact remaining to be litigated; (2) the movant is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and, viewing the evidence in the non-moving party's favor, that conclusion favors the movant. *See, e.g.,* Civ.R. 56(C).

**{¶58}** "When considering a motion for summary judgment, the trial court may not weigh the evidence or select among reasonable inferences. *Dupler v. Mansfield Journal Co.,* 64 Ohio St.2d 116, 121 * * * (1980). Rather, all doubts and questions must be resolved in the non-moving party's favor. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 359 * * * (1992). Hence, a trial court is required to overrule a motion for summary judgment where conflicting evidence exists and alternative reasonable inferences can be drawn. *Pierson v. Norfork Southern Corp.*, 11th Dist. No. 2002-A-0061, 2003-Ohio-6682, ¶36. In short, the central issue on summary judgment is, 'whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-252 * * * (1986). On appeal, we review a trial court's entry of summary judgment de novo. *Grafton v. Ohio Edison Co.,* 77 Ohio St.3d 102, 105 * * * (1996)." *Meloy v. Circle K Store*, 11th Dist. Portage No. 2012-P-0158, 2013-Ohio-2837, ¶5-6. (Parallel citations omitted.)

17

{¶59} In this appeal, appellant presents two assignments of error. However, the majority, in affirming the trial court's judgment, only addresses the second assignment of error indicating it is dispositive of the appeal. As I believe this matter should be reversed and remanded, I will address both assignments.

{¶60} In his first assignment of error, appellant argues the trial court erred in finding that he failed to demonstrate a prima facie case that he was regarded as disabled by his employer, Weathersfield Township.

{¶61} To state a prima facie claim of employment discrimination on the basis of disability/handicap under R.C. 4112.02(A), the party seeking relief must establish: "'(* * *) (1) That he or she was handicapped; (2) that an adverse employment action was taken by an employer, at least in part, because the individual was handicapped, and (3) that the person, though handicapped, can safely and substantially perform the essential functions of the job in question. (***)'" *House v. Kirtland Capital Partners*, 158 Ohio App.3d 68, 75, 2004-Ohio-3688 (11th Dist.2004), quoting *Columbus Civ. Serv. Comm. v. McGlone*, 82 Ohio St.3d 569, 571 (1998), citing *Hazlett v. Martin Chevrolet, Inc.*, 25 Ohio St.3d 279, 281 (1986).

{¶62} Ohio Adm. Code 4112-5-02(H) states: "'Disabled person' includes any person who presently has a disability as defined by division (A)(13) of section 4112.01 of the Revised Code or any person who has had a disability as defined by division (A)(13) of section 4112.01 of the Revised Code, who no longer has any functional limitation, but who is treated by a respondent as having such a disability, or any person who is regarded as disabled by a respondent."

{¶63} Based on the record before this court, I disagree with the trial court's opinion that the evidence that appellant actually suffers from a disability is "scant."

18

Appellant need not show that he is actually disabled but rather that Weathersfield Township regarded him as disabled. *See* Ohio Adm. Code 4112-5-02(H). There is competent and credible evidence that Weathersfield Township did regard appellant as disabled and not able to perform his job duties after he returned from medical leave.

{¶64} Specifically, appellant was off on medical leave due to depression following his 30-day suspension. The record demonstrates that Weathersfield Township authorities saw and/or knew of the psychological report which determined appellant's lack of cognitive ability and emotional stability to function effectively in his capacity as a police officer. In addition, when appellant returned to work, the Police Chief, the Captain, and appellant's fellow officers had concerns about his ability to perform his duties, due to his emotional instability, and expressed their concerns. Also, the Police Chief felt appellant needed ongoing counseling.

{¶65} Based on the foregoing, there was sufficient evidence to establish a prima facie case that Weathersfield Township regarded appellant as disabled.

{¶66} This writer finds merit in appellant's first assignment of error.

{¶67} In his second assignment of error, appellant contends the trial court erred in finding that he had not demonstrated by a preponderance of the evidence that Weathersfield Township's stated reasons for termination were pretextual.

{¶68} Once a prima facie case of disability discrimination is established, "[t]he burden of proof then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the plaintiff's discharge. * * * Once established, the burden shifts back to the plaintiff to prove that the employer's articulated nondiscriminatory reason for its action was merely pretext for unlawful discrimination." (Citations omitted.) *Egli v. Congress*

19

*Lake Club*, 5th Dist. Stark No. 2009CA00216, 2010-Ohio-2444, ¶39 (O'Toole, J., sitting by assignment).

{¶69} Weathersfield Township terminated appellant for two alleged incidents of dishonesty. However, appellant has denied he was dishonest. In addition, the record reveals genuine issues of fact regarding the dishonesty allegations. Appellant has established that he informed Weathersfield Township he sought counseling from his primary care physician, Dr. Cayavec. Appellant did not seek counseling from Dr. Heilman because Dr. Heilman had indicated he would report appellant's statements back to Weathersfield Township. The Police Chief did not accept appellant's explanation. Appellant was forced to give in with the Chief's demands. This writer stresses that this does not amount to dishonesty on behalf of appellant.

{¶70} Further, with respect to the Antonell incident, there was no admission of liability and no formal finding that appellant lied to the Police Chief and the Captain. Instead, appellant disputes it. Nevertheless, the trial court disregarded and impermissibly weighed these material facts.

{¶71} Appellant has provided evidence which could lead a reasonable trier of fact to determine that Weathersfield Township's stated reason for terminating him was in fact false. The trial court erred in finding that appellant could not establish pretext as there are genuine issues of fact as to whether the reason for his termination was credible or worthy of belief. The facts presented do not support that Weathersfield Township held an honest belief that the reason for appellant's termination was a lack of veracity. Rather, a rational trier of fact could conclude that Weathersfield Township's true motivation for terminating appellant was Weathersfield Township's regarding him as disabled.

20

{¶72} This writer also finds merit in appellant's second assignment of error.

{¶73} Accordingly, because I believe the trial court erred in granting summary judgment in favor of Weathersfield Township, I respectfully dissent.