**[Cite as *Ohio Bur. of Workers' Comp. v. Price*, 2023-Ohio-4395.]**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio Bureau of<br>Workers' Compensation, | : | |
| | : | No. 23AP-82 |
| Plaintiff-Appellee, | | (C.P.C. No. 22CV-0227) |
| | : | |
| v. | | (ACCELERATED CALENDAR) |
| | : | |
| Thomas Price et al., | | |
| | : | |
| Defendants-Appellants. | | |
| | : | |

D E C I S I O N

Rendered on December 5, 2023

**On brief:** *Dave Yost,* Attorney General, *Cooke Demers, LLC,*
*Andrew P. Cooke,* and *Adam J. Bennett* for appellee.
**Argued:** *Adam J. Bennett.*

**On brief:** *Dennis W. McNamara* for appellants.
**Argued:** *Dennis W. McNamara.*

APPEAL from the Franklin County Court of Common Pleas

MENTEL, J.

{¶ 1} Defendants-appellants, Thomas Price and ES of Ohio, Inc., appeal from the trial court's January 6, 2023 judgment entry adopting a magistrate's decision, pursuant to a damages hearing, finding appellants jointly and severally liable for the sum of $30,683.18. For the reasons that follow, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} Between September 21, 2011 and April 1, 2015, Price operated as a certified vocational rehabilitation specialist for the State of Ohio Bureau of Workers' Compensation ("BWC"). Price traveled across Ohio to injured workers covered by Ohio's workers'

compensation system and provided rehabilitation services. Price would then bill and receive payment from the BWC through ES of Ohio, Inc. Price was entitled to reimbursement from the BWC for his actual time and mileage in the course of his work as a vocational rehabilitation specialist. During this time, the BWC Special Investigation Department conducted an audit of Price's billing practices. Aric Bizzari, a special agent employed by the BWC, attested that when "Price saw multiple injured workers, he billed the round-trip time and mileage from his home to each individual patient even though he was not making a separate trip for each injured worker." (Aug. 19, 2022 Ex., Bizzari Aff. at ¶ 9.)

{¶ 3} On September 17, 2015, a Franklin County Grand Jury returned a criminal indictment against Price for workers' compensation fraud in violation of R.C. 2913.48, a felony of the fourth degree (Count One), and theft in violation of R.C. 2913.02, a felony of the fourth degree (Count Two). *State v. Price*, Franklin C.P. No. 15CR-4570 ("*Price I*"). The indictment alleged that Price engaged in deceptive billing practices for his mileage and travel time from September 21, 2011 to December 30, 2014. The matter proceeded to a jury trial in March 2017. Prior to trial, the parties entered into a series of stipulations. The stipulations, in relevant part, provide as follows:

> The State of Ohio and Thomas E. Price have agreed that certain facts can be accepted by the jury as true. This case involves thousands of pages of treatment notes, billing records, and payment records. The stipulations are intended to avoid many hours of testimony to identify and authenticate records, and to establish facts that are not disputed. The parties may still present any relevant evidence they believe to be helpful to their respective sides of the case. But the jury should consider the following facts to be true without the need for any evidence or proof.
>
> * * *
>
> The total difference between Thomas E. Price's bills and the amounts he would have billed if the time and milage was pro-rated between the patients seen by Thomas E. Price, is $8,772.20.
>
> The two counts in the pending Indictment refer to an amount of $7,500.00 or more. The actual amount involved is $8,772.20 as described above.

(Jan. 21, 2022 Answer, attached Stipulations at 1, 3.)

{¶ 4} At the conclusion of the trial, a jury acquitted Price of all charges. On February 25, 2020, BWC filed a civil complaint against appellants asserting causes of action for violation of Ohio Adm.Code 4123-6-25 (Count One) and breach of contract (Count Two). *State of Ohio Bureau of Workers' Compensation v. Price, et al.,* Franklin C.P. No. 20CV-1598 ("*Price II*"). The BWC sought damages in the amount of $30,683.18. According to the BWC, the increase in alleged damages from the criminal complaint to the civil complaint was based on the discovery of additional dates that Price had overbilled. The BWC explained that it only discovered the additional evidence after the criminal indictment was presented to the grand jury.

{¶ 5} During the course of the litigation, the parties filed competing motions for summary judgment. Appellants moved for summary judgment arguing that res judicata precluded the BWC from pursuing additional damages in the subsequent civil case. Conversely, the BWC moved for partial summary judgment arguing that there was no genuine dispute of material fact that $8,772.20 was overpaid to appellants as Price conceded the issue by agreeing to the joint stipulations prior to the criminal trial. On November 13, 2020, the trial court denied both motions for summary judgment. The trial court found that because the stipulations were not actually litigated, res judicata could not preclude the increase in alleged damages by the BWC. The trial court also denied the BWC's motion for summary judgment writing that the BWC had failed to meet its burden that Price engaged in conduct that required him to prorate his billing on the dates included in the stipulations. On February 11, 2021, the BWC filed a motion for leave to file a second motion for summary judgment contending that it had resolved the proration issue. The trial court denied the motion on February 18, 2021. On August 18, 2021, the BWC dismissed the complaint pursuant to Civ.R. 41(A).

{¶ 6} On January 11, 2022, the BWC refiled its complaint asserting the same causes of action as the prior complaint ("*Price III*"). On August 19, 2022, the BWC filed a motion for summary judgment arguing there was no dispute of material fact that Price billed for amounts that exceeded his actual miles traveled and time spent traveling, and the BWC was entitled to $30,683.18 in damages. As acknowledged by Price, the BWC included additional evidence that was not submitted in the motion for summary judgment filed in *Price II*. On

August 26, 2022, appellants filed a joint memorandum contra opposing the BWC's motion for summary judgment. Appellants argued the doctrine of res judicata precluded the trial court from granting partial summary judgment. Relevant to the instant appeal, appellants argued that collateral estoppel barred the increase in damages from $8,772.20 to $30,683.18. Appellants also argued that the BWC was precluded from seeking summary judgment in *Price III* as the trial court had previously found there was a dispute of fact as to liability in *Price II*.

{¶ 7} On October 18, 2022, the trial court granted partial summary judgment as to liability against appellants. The trial court held that the BWC had met its burden finding there was no dispute of material fact that appellants engaged in at least one instance of overbilling. The trial court explained that summary judgment was warranted because the BWC provided evidence that was absent in *Price II* as well as additional cases of overbilling outside the stipulations in *Price I*. (Oct. 18, 2022 Decision & Entry at 9.) The trial court rejected appellants' arguments that res judicata precluded a finding of liability or barred the BWC from seeking additional damages beyond the amount provided in the joint stipulations in *Price I*. Pursuant to Civ.R. 53, the trial court referred this matter to a magistrate to conduct a damages hearing. On December 15, 2022, the magistrate issued findings of fact and conclusions of law finding the BWC was entitled to damages against appellants, jointly and severally, in the amount of $30,683.18. On January 6, 2023, the trial court, without objection from appellants, issued its final judgment entry adopting the magistrate's decision.

{¶ 8} Appellants filed a timely appeal in this matter.

## II. ASSIGNMENT OF ERROR

{¶ 9} Appellants assign the following as trial court error:

> THE TRIAL COURT ERRED WHEN IT GRANTED THE APPELLEE'S MOTION FOR PARTIAL SUMMARY JUDGMENT AFTER THE STATE HAD TRIED AND FAILED TWICE ON THE ISSUE ON WHICH THE COURT GRANTED JUDGMENT.

## III. STANDARD OF REVIEW

{¶ 10} This court reviews a trial court's decision to grant a motion for summary judgment de novo. *Kiser v. United Dairy Farmers*, 10th Dist. No. 22AP-539, 2023-Ohio-2136, ¶ 9. Under a de novo standard of review, a reviewing court undergoes an independent

review of the evidence without deference to the trial court's decision. *Id.*, citing *Nazareth Deli LLC v. John W. Dawson Ins. Inc.*, 10th Dist. No. 21AP-394, 2022-Ohio-3994, ¶ 22. As set forth in Civ.R. 56(C), before summary judgment can be granted, the trial court must find: (1) there are no outstanding genuine issues of material fact to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, it appears that reasonable minds can only come to one conclusion that is adverse to the nonmoving party. *State ex rel. Duganitz v. Ohio Adult Parole Auth.*, 77 Ohio St.3d 190, 191 (1996).

{¶ 11} The issue of whether res judicata applies in a particular case is a question of law that is reviewed de novo. *State v. Jefferson*, 10th Dist. No. 21AP-306, 2021-Ohio-4188, ¶ 7; *Lane v. U.S. Bank, N.A.*, 10th Dist. No. 18AP-197, 2018-Ohio-3140, ¶ 7, citing *Daniel v. Williams*, 10th Dist. No. 13AP-155, 2014-Ohio-273, ¶ 18.

## IV.  LEGAL ANALYSIS

### A. Appellants' Sole Assignment of Error

{¶ 12} Preliminarily, we must define the scope of our review in this matter. Appellants do not contend that the trial court erred in its determination as to liability or that the trial court erred by adopting the magistrate's decision concerning the $30,683.18 damages determination. Instead, appellants argue that the trial court was precluded, under the doctrine of res judicata, from even considering (1) the increase in damages beyond the stipulated amount in *Price I* or (2) the issue of liability based on its prior denial of summary judgment in *Price II*. As such, we will forego any analysis concerning the liability or damages determinations and focus our analysis on the application of res judicata as it relates to the two issues identified in appellants' brief. App.R. 12(A)(2); App.R. 16(A)(7). *Prox v. Cleveland Steel Container Corp.*, 11th Dist. No. 2005-T-0045, 2006-Ohio-2770, ¶ 16, citing *House v. Kirtland Capital Partners*, 158 Ohio App.3d 68, 2004-Ohio-3688, ¶ 15 (11th Dist.2004) (concluding that because appellant failed to present any arguments concerning his wrongful discharge claim, a reviewing court may decline to provide any analysis concerning the court's grant of summary judgment on that particular cause of action).

### 1. Res Judicata

**{¶ 13}** Next, we must identify the nature of appellants' res judicata arguments. Appellants appear to muddle the two distinct concepts of claim preclusion and issue preclusion. At one point in their brief, appellants argue that this case concerns claim preclusion. (*See* Appellants' Brief at 9) ("The issue in this case involves claim preclusion."). Then appellants set forth the caselaw and analysis as if the case concerns issue preclusion. (Appellants' Brief at 10-12.)

**{¶ 14}** Under Ohio law, res judicata comprises two related concepts, claim preclusion (traditionally known as estoppel by judgment) and issue preclusion (historically known as collateral estoppel). *State ex rel. Jefferson v. Russo*, 159 Ohio St.3d 280, 2020-Ohio-338, ¶ 9, citing *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 381 (1995). While claim preclusion bars the relitigation of the same cause of action, collateral estoppel bars the relitigation of an issue that has been actually and necessarily litigated and determined in a prior case. *Lemons v. State*, 8th Dist. No. 109188, 2020-Ohio-5619, ¶ 35, citing *Whitehead v. Gen. Tel. Co.,* 20 Ohio St.2d 108, 112 (1969); *see also Russo* at ¶ 9, citing *Thompson v. Wing*, 70 Ohio St.3d 176, 183 (1994). While there is an obvious overlap in the analysis of both concepts, "[a] final, valid decision on the merits of the claims asserted is an essential element of claim preclusion because that doctrine bars further claims. Issue preclusion, on the other hand, requires only that the issue in controversy be determined by a final, appealable order." *533 Short North LLC v. Zwerin*, 10th Dist. No. 14AP-1016, 2015-Ohio-4040, ¶ 25, citing *Glidden Co. v. Lumbermens Mut. Cas. Co.*, 112 Ohio St.3d 470, 2006-Ohio-6553, ¶ 45.

**{¶ 15}** Upon review, we conclude the two issues identified by appellants concern collateral estoppel. Appellants do not contend that the BWC was precluded from filing a civil complaint but argue that it was limited to the $8,772.20 in damages identified in *Price I*. Similarly, appellants do not argue that the BWC could not file a second civil complaint, but that the trial court erred by granting partial summary judgment because it had already determined in *Price II* that there was a dispute of fact as to liability. Moreover, the entries appellants rely upon are not final, valid decisions on the merits of the claims asserted. Our conclusion is further bolstered by counsel's statement during oral arguments, "[b]ecause we know what the amount in controversy is. Frankly, Thomas Price does not care if

summary judgment stands for the agreed amount of [$8,772.20] because if it went back and was tried again that is where it would end up again." (July 27, 2023 Oral Argument at 22:55). Therefore, our analysis will focus on whether collateral estoppel precludes the relitigation of the two issues identified in appellants' brief.

### a. *State of Ohio v. Price*, Franklin C.P. No. 15CR-4570

{¶ 16} Appellants first argue that the trial court erred by finding that the BWC was not barred, under the doctrine of collateral estoppel, from pursuing damages in the civil cases that exceeded the stipulated amount in *Price I*.

{¶ 17} This court has held that collateral estoppel applies when: " '(1) the identical issue or fact was actually and directly at issue in a previous action; (2) the issue or fact was passed upon and determined by a court of competent jurisdiction; (3) the issue or fact was actually litigated, directly determined, and essential to the final judgment in the prior action; and (4) both actions involved the same parties, or their privies.' " *Lakeview Loan Servicing, LLC v. Schultz*, 10th Dist. No. 18AP-399, 2019-Ohio-4689, ¶ 13, quoting *McCabe Corp. v. Ohio Environmental Protection Agency*, 10th Dist. No. 12AP-204, 2012-Ohio-6256, ¶ 19.[1]

{¶ 18} After consideration of the parties' briefs and available record, appellants' argument fails as the stipulated damages in *Price I* were not actually and directly litigated. This court has held that a fact in stipulation from a previous action is not " 'actually litigated[] as required to invoke the doctrine of issue preclusion in a subsequent action.' " *State v. C.A.*, 10th Dist. No. 14AP-738, 2015-Ohio-3437, ¶ 18, quoting *State ex rel. Davis v. Public Emps. Retirement Bd.*, 174 Ohio App.3d 135, 2007-Ohio-6594, ¶ 35. To be sure, there are instances where a stipulation could bind the parties going forward, however, in those cases such stipulations must "manifest[] an intention to be bound." *Washburn v. Senff*, 5th Dist. No. 2002CA00393, 2003-Ohio-4379, ¶ 16, citing 1 Restatement of the Law 2d, Judgments, Section 27, Comment e (1982). There are many reasons why a party might

---

[1] There was some discussion among the parties as to the correct test to employ when resolving whether collateral estoppel bars a particular issue or fact. Appellants rely on the language in *Grava*, 73 Ohio St.3d 379, while the BWC relies on the test in *Business Dev. Corp. v. Rutter & Russin, LLC*, 37 F.4th 1123 (6th Cir.2022). However, both cases address claim preclusion and not issue preclusion. *See Grava* at 381 ("This case involves claim preclusion only"); *Business Dev. Corp.* at 1129 ("This case concerns Ohio's claim-preclusion rules."). As set forth in the body of this decision, given the substance of appellants' arguments, as well as statements during oral arguments, we will consider this matter solely on the grounds of issue preclusion.

elect to not raise an issue in a particular case such as " 'conserving judicial resources, []
maintaining consistency, and [] avoiding oppression or harassment of the adverse party.' "
*State ex rel. Davis v. Public Emps. Retirement Bd.*, 120 Ohio St.3d 386, 2008-Ohio-6254,
¶ 31, quoting 1 Restatement of the Law 2d, Judgments, Section 27, at 256-57 (1982). If such
preclusive effect were given to stipulated issues that were not actually litigated in the first
instance, the result would discourage compromise and reduce the likelihood that the issues
of the case would be narrowed for trial. *Id.* Accordingly, there are strong public policy
reasons that "weigh strongly in favor of nonpreclusion." *Id*. at ¶ 32.

{¶ 19} Appellants cite our decision in *Thomas v. Wright State Univ. School of
Medicine*, 10th Dist. No. 12AP-839, 2013-Ohio-3338, ¶ 16-20 for the proposition "that a
stipulation can serve as a basis for a finding of res judicata." (Appellants' Brief at 15.) While
we do not disagree with appellants' general claim that a stipulation may serve as a basis for
collateral estoppel, the stipulations in *Price I*, like the stipulations in *Thomas*, do not have
a preclusive effect in this case. In *Thomas*, the stipulation in the first case did not have a
preclusive effect as there was no privity between the parties. Here, the stipulations were
intended to function as a tool of convenience for the parties to expedite the litigation. There
is no language in the stipulations to indicate the parties manifested an intent to be bound
in a subsequent action. As such, we are not persuaded that the BWC should be barred from
pursuing additional damages in the civil case.

{¶ 20} Furthermore, the fourth element—whether both actions involved the same
parties or their privies—is also not met. While the concept of privity is " 'somewhat
amorphous,' " Ohio courts have elected to apply a " 'broad definition' " of the term. *State
ex rel. Schachter v. Ohio Pub. Emps. Retirement Bd.*, 121 Ohio St.3d 526, 2009-Ohio-1704,
¶ 33, quoting *Brown v. Dayton*, 89 Ohio St.3d 245, 248 (2000); *Kirkhart v. Keiper*, 101
Ohio St.3d 377, 2004-Ohio-1496, ¶ 8. " 'As a general matter, privity [is] "the relationship
between the one who is a party on the record and another is close enough to include that
other within the res judicata." ' " *Daniel,* 2014-Ohio-273, at ¶ 33, quoting *Thompson*, 70
Ohio St.3d at 184, quoting *Bruszewski v. United States*, 181 F.2d 419, 423 (3d Cir.1950)
(Goodrich, J., concurring). Privity occurs "where a party is so identified in interest with
another that the party represents the same legal right." *Wright v. Heller*, 1st Dist. No. C-
160897, 2018-Ohio-149, ¶ 25. A contractual connection or one rooted in estate law is not

required. *Business Dev. Corp.*, 37 F.4th at 1136, citing *Brown* at 248. Merely a "mutuality of interest, including an identity of desired result." *State ex rel. Schachter v. Ohio Pub Emp. Retirement Bd.*, 10th Dist. No. 07AP-444, 2008-Ohio-3624, ¶ 19. To establish privity, there must be a close enough relationship between the parties that it would serve the preclusion law's purposes to apply collateral estoppel even though the parties are technically distinct. *Id.* Moreover, an interest in the original action or active participation in the original case could also demonstrate privity. *Coleman v. Warren*, 1st Dist. No. C-210362, 2022-Ohio-1020, ¶ 8, citing *O'Nesti v. DeBartolo Realty Corp.*, 113 Ohio St.3d 59, 2007-Ohio-1102, ¶ 9. The crux of the issue is whether the new party had adequate representation in the original case. *Coleman* at ¶ 10, citing *Monfort Supply Co. v. Cheviot*, 1st Dist. No. C-940898, 1995 Ohio App. LEXIS 4172, *16-17 (Sept. 27, 1995).

{¶ 21} Ohio courts have found that an alleged victim of a crime and the state of Ohio are not in privity when the victim seeks civil damages after a criminal case. *See, e.g., Manley v. Rufus Club Mozambique, Inc.*, 111 Ohio App.3d 260, 263 (3d Dist.1996). In *Manley*, the patron of a bar filed a civil complaint for personal injuries allegedly sustained when the manager of a bar shot the patron while breaking up an altercation. While the manager was charged with two counts of felonious assault, he was ultimately acquitted based on his claim of self-defense. While the trial court dismissed the patron's civil complaint based on res judicata, the Third District Court of Appeals reversed finding privity did not exist between the state of Ohio and a plaintiff in a subsequent civil case that was the alleged victim of a crime. While the patron was a witness in the criminal case, the *Manley* court found that the individual had no overt control over significant aspects of the case such as: whether to empanel a jury, which witnesses to call on cross-examination, or ability to appeal the trial court's ruling of acquittal. *Id.* at 263; *see also Coleman* (finding there was no privity between the state of Ohio and the plaintiff that brought a negligence claim derived from a traffic accident). To be sure, there have been cases where a government agency was found to be in privity with the state. In *State v. Williams*, 76 Ohio St.3d 290, 295 (1996), the Supreme Court of Ohio found that the BMV was in privity with the state concerning the appeal of an administrative license suspension and a criminal case. The *Williams* court explained, "[t]he state acts through its various agencies and entities, and the Bureau of Motor Vehicles is an agency of the state. We conclude that the state of Ohio

is the real party in interest in both proceedings and the requirement of privity as an element of issue preclusion is satisfied." *Id*. at 295. Moreover, Ohio courts have found other cases where the state is in privity with its agents in cases where a party challenges the same conduct by suing a different government actor. *See e.g., State ex rel. Johnson v. Bureau of Sentence Computation*, 159 Ohio St.3d 552, 2020-Ohio-999 (finding privity between Ohio Department of Rehabilitation and Correction and its prison wardens).

{¶ 22} However, we find the facts of the instant case more analogous to *Manley*, than *Williams* and *Johnson*. Here, much like the patron in *Manley*, the BWC is seeking monetary damages against appellants despite Price's acquittal in the criminal case. While the prosecutor's office and attorney general's office are government agencies, they are distinct enough in their roles to evade privity in this instance. Unlike the facts in *Williams* where the prosecuting attorney represented the state at both the ALS appeal and the criminal case, the BWC, as represented by the attorney general's office, was not directly involved in *Price I* and would have had no ability to appeal the judgment in the criminal case. *Manley* at 263; *accord State Farm Mut. Auto. Ins. Co. v. Hill*, 2d Dist. No. 2006 CA 24, 2007-Ohio-581, ¶ 9. Unlike *Johnson* or *Williams*, the role of two government agencies is far too distinct that it would not serve the preclusion law's purpose to apply collateral estoppel in this instance.

{¶ 23} There are many differentiating factors between criminal and civil cases that preclude the application of collateral estoppel on the issue of damages. " 'The qualitative differences between civil and criminal proceedings [including the differing standards of proof, rules of discovery, and rules of evidence] militate against giving criminal judgments preclusive effect in civil or quasi-civil litigation.' " *State ex rel. Ferguson v. Court of Claims*, 98 Ohio St.3d 399, 2003-Ohio-1631, ¶ 24, quoting *Walden v. State*, 47 Ohio St.3d 47, 52 (1989); *Manley* at 263; *see also Coleman*, 2022-Ohio-1020, at ¶ 12-13 (finding res judicata did not apply, in part, based on the differences in the burden of proof and rules in a traffic court proceeding and a civil proceeding). There are also notable differences involving privilege and self-incrimination between criminal and civil matters. *Walden* at 51. The *Walden* court wrote, "[a]s a general rule, a verdict or judgment of acquittal in a criminal trial is a determination that the state has not met its burden of proof on the essential elements of the crime. It is not necessarily a finding that the accused is innocent." *Id*.

Because there are different parties, as well as the lack of privity between the Franklin County Prosecutor's Office and the BWC, the factual stipulations at issue have no preclusive effect. *Thomas*, 2013-Ohio-3338, at ¶ 17, citing *State ex rel. Jeany v. Cleveland Concrete Constr., Inc.*, 107 Ohio St.3d 20, 2005-Ohio-5828, ¶ 8 (finding factual stipulations are not binding on a non-party).

{¶ 24} Appellants argue the state had every incentive to litigate the full amount stolen because it would elevate the seriousness of the offense. Appellants posit that the state would have wanted to allege the full amount to "exceed the statutory threshold by as much as possible" to have an additional cushion if the jury did not accept all the arguments as alleged. (Appellants' Brief at 13.) Appellants rely on our language in *C.A.*, 2015-Ohio-3437, at ¶ 21 that provides the " 'essential test in determining whether the doctrine of collateral estoppel is to be applied is whether the party against whom the prior judgment is being asserted had full representation and a "full and fair opportunity to litigate that issue in the first action." ' " *Id.,* quoting *Cashelmara Villas Ltd. Partnership v. DiBenedetto*, 87 Ohio App.3d 809, 813 (8th Dist.1993), quoting *Hicks v. De La Cruz*, 52 Ohio St.2d 71, 74 (1977).

{¶ 25} The doctrine of res judicata promotes finality and judicial economy by barring endless relitigation of an issue or case in which a party has already received a full and fair chance to be heard. *State v. Jefferson*, 10th Dist. No. 21AP-306, 2021-Ohio-4188, ¶ 9, citing *State v. Saxon*, 109 Ohio St.3d 176, 2006-Ohio-1245, ¶ 18. The doctrine of res judicata, however, should " 'not to be applied so rigidly as to defeat the ends of justice.' " *Washburn*, 2003-Ohio-4379, at ¶ 16, quoting *Bauer v. Huntington Natl. Bank*, 10th Dist. No. 99AP-347, 2000 Ohio App. LEXIS 412 *16 (Feb. 10, 2000). Concerning the increase in damages, the BWC has explained that the change from $8,772.20 in the criminal case to $30,683.18 in the civil claims was based on new evidence discovered after the indictment that revealed additional occurrences of overbilling. It is illogical to conclude that the state was engaging in gamesmanship with the amount of damages if the BWC discovered the information after the indictment reached the grand jury. Regardless, even accepting that the BWC was aware of the full amount of damages, it does not change the fact that the damages agreed upon by the parties in the joint stipulation were not actually, directly litigated. As set forth previously, there are many reasons why parties enter into joint

stipulations. Accordingly, we cannot find that the BWC was collaterally estopped from seeking additional damages in the subsequent civil cases.

**b**. *State of Ohio Bureau of Workers' Compensation v. Price, et al., Franklin C.P. No. 20CV-1598*

**{¶ 26}** Appellants next contend that because the BWC's motion for summary judgment was denied in *Price II*, the trial court was precluded in *Price III* from partially granting the BWC's motion for summary judgment. Because it resolves the issue in its entirety, we will focus our analysis on whether the denial of summary judgment in *Price II* constituted a final order.

**{¶ 27}** Under Ohio law, in order for courts to invoke the doctrine of collateral estoppel, there must be a final order. *Glidden Co.,* 2006-Ohio-6553, at paragraph two of the syllabus. Since a trial court's denial of a motion for summary judgment does not determine an action or prevent a judgment, it does not constitute a final order under R.C. 2505.02. *Nazereth Deli LLC*, 2022-Ohio-3994, at ¶ 65, citing *Celebrezze v. Netzley*, 51 Ohio St.3d 89, 90 (1990). " 'This is because the denial of the motion does not determine the outcome of the case. * * * [A] judgment in either party's favor is not precluded.' " *State ex rel. Amex v. Portage Cty. Bd. of Commr*s. 11th Dist. No. 2021-P-0109, 2022-Ohio-1207, ¶ 7, quoting *Rhodes v. Paragon Molding, Ltd*., 2d Dist. No. 23969, 2010-Ohio-6110, ¶ 32. *Cote v. Eisinger*, 9th Dist. No. 05CA0076, 2006-Ohio-4020, ¶ 8 (finding a collateral estoppel determination is dependent on a final judgment in the prior case).

**{¶ 28}** In *Price II*, the trial court denied the BWC's motion for summary judgment finding, "[the BWC] has not affirmatively demonstrated that there is no issue of genuine fact that Price engaged in conduct that required him to pro-rate his billing on the dates included in Plaintiff's Exhibit A." (*Price II* Nov. 13, 2020 Decision & Entry at 7.)[2] As the denial of the motion for summary judgment in *Price II* was an interlocutory order that was

---

[2] While absent from the record, we take judicial notice of the entry denying the parties competing motions for summary judgment as well as the dismissal entry in *Price II*, which were both accessible on the internet. *State ex rel. Rojas v. Page*, 10th Dist. No. 21AP-506, 2022-Ohio-2226, ¶ 15, citing *Draughon v. Jenkins*, 4th Dist. No. 16CA3528, 2016-Ohio-5364, ¶ 26, citing *State ex rel. Everhart v. McIntosh*, 115 Ohio St.3d 195, 2007-Ohio-4798, ¶ 8, 10; *see also Rojas* at ¶ 15, citing *Giannelli*, 1 Baldwin's Ohio Practice Evidence, Section 201.6 (3d Ed.2015) ("noting that the rule generally precluding a court from taking judicial notice of other cases has been relaxed if the record is accessible on the internet"); *Lane v. U.S. Bank N.A.,* 10th Dist. No. 22AP-358, 2023-Ohio-1552, ¶ 2.

not subject to immediate appeal, it was not a final order as it could have been modified at any time prior to the final judgment being rendered. *Stevens v. Ackman*, 91 Ohio St.3d 182, 186 (2001) (finding the denial of a motion for summary judgment is generally considered an interlocutory order not subject to immediate appeal); *Chitwood v. Zurich Am. Ins. Co.*, 10th Dist. No. 04AP-173, 2004-Ohio-6718, ¶ 9.

{¶ 29} Likewise, the Supreme Court has held that all interlocutory orders in a prior proceeding are dissolved after a dismissal as " 'a Civ.R. 41(A) dismissal nullifies the action only with respect to those parties dismissed from the suit.' " *Glidden Co.* at ¶ 46, quoting *Denham v. New Carlisle*, 86 Ohio St.3d 594, 597 (1999). A voluntarily dismissed case, pursuant to Civ.R. 41(A)(1), is not a resolution on the merits. *Hensley v. Henry*, 61 Ohio St.2d 277, 279 (1980) (finding a Civ.R. 41(A)(1) notice of dismissal does not constitute "an adjudication upon the merits" where the plaintiff has not previously dismissed an action based on the same claim and where the notice of dismissal "did not 'otherwise' state that it should so operate."). Therefore, the BWC's voluntary dismissal without prejudice, under Civ.R. 41(A)(1), does not operate as an "adjudication on the merits" as the case had not been previously dismissed. *East-West Constr. Co. v. Ohio Dept. of Natural Resources*, 10th Dist. No. 99AP-480, 1999 Ohio App. LEXIS 6464, *7 (Dec. 30, 1999), citing *Hensley* at 279. Because a collateral estoppel determination is dependent on a final judgment in the prior case, the trial court properly considered the BWC's motion for summary judgment in *Price III*.

{¶ 30} Appellants rely on *CTI Audio v. Fritkin-Jones Design Group*, 144 Ohio App.3d 449 (2d Dist.2001) for the proposition that issue preclusion can apply to a voluntarily dismissed case. (Appellants' Brief at 17.) Appellants misconstrue the facts and holding of *CTI Audio*. A brief review is instructive.

{¶ 31} In *CTI Audio,* the plaintiff filed a civil complaint for breach of contract and replevin, which was initially dismissed by the trial court, pursuant to Civ.R. 12(B)(2), for lack of personal jurisdiction. The complaint was refiled asserting the same claims, which also included an affidavit providing grounds on which the court could exercise long-arm jurisdiction. Fritkin-Jones moved for summary judgment, which the trial court granted based on the doctrine of collateral estoppel. The Second District Court of Appeals reversed finding the trial court's grant of summary judgment was in error as "CTI is not barred by

*res judicata* from commencing a second action on the same claims for relief, one in which the pleading defect which doomed the prior action has been cured." (Emphasis sic.) *CTI Audio* at 454. In *Price II*, the trial court denied the BWC's initial motion for summary judgment because the BWC failed to demonstrate that Price engaged in conduct that required him to prorate his billing on the dates included in the stipulation. In *Price III*, in much the same way that CTI Audio remedied its jurisdictional defect, the BWC presented additional evidence in its motion for summary judgment that resolved the trial court's proration concerns expressed in *Price II*.

{¶ 32} Accordingly, appellants' sole assignment of error is overruled.

**V. CONCLUSION**

{¶ 33} Having overruled appellants' sole assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BOGGS and EDELSTEIN, JJ., concur.

————————————